McGRAW EDISON, WAGNER
DIVISION, Appellee,

v.

LOCAL 1104, INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL–CIO, Appellant.

No. 84–1466.

United States Court of Appeals,
Eighth Circuit.

Submitted March 11, 1985.

Decided July 11, 1985.

Rehearing and Rehearing En Banc
Denied Aug. 21, 1985.

Barry Levine, St. Louis, Mo., for appellant.

D.J. Sullivan, St. Louis, Mo., for appellee.

Before HEANEY, BRIGHT and AR-NOLD, Circuit Judges.

HEANEY, Circuit Judge.

The issue in this appeal is whether the district court erred in vacating an arbitration award granting vacation pay to certain members of Local 1104, International Union of Electrical, Radio and Machine Workers, AFL–CIO, who were formerly employees of the Wagner Division of McGraw Edison Company. The district court ruled in substance that the arbitrator had so clearly misconstrued the parties' collective bargaining agreement and their bargaining history that his award did not draw its essence from the agreement. We reverse.

## I. BACKGROUND.

For a number of years, the Company and the Union have been parties to successive collective bargaining agreements. The agreement under which this dispute arises was in effect for the period April 2, 1982 to March 31, 1984. Sometime in 1982, the Company informed the Union that the plant which employed most of the workers represented by the Union would be closed and the employees terminated. The plant closed on December 22, 1982.

Shortly thereafter, a dispute arose under the parties' collective bargaining agreement regarding whether vacation pay was due Union members who had been employed at the Company's plant for at least 120 days between July 22, 1982 and December 22, 1982. Section Three of Article 13 of that agreement provides that:

> Employees on the payroll as of the starting date of the vacation period and who have been on the active payroll for 120 calendar days or more during the 12 calendar months immediately prior to July 22 of the current year will be entitled to vacation benefits as follows: [Followed by stated periods of vacation ranging from one to six weeks based on length of service.]

After the parties failed to reach an agreement, they submitted the dispute to "final and binding" arbitration before an arbitrator of their choice as provided under Article 4 of the collective bargaining agreement. Both parties agreed that the employees in question had satisfied Section Three's 120-day work requirement. The Company contended, however, that Section Three's phrase, "[e]mployees on the payroll as of the starting date of the vacation period," was a second criterion for vacation eligibility. For the period in question, the term "vacation period," argued the Company, meant the calendar year January 1, 1983 through December 31, 1983. Because all the employees had been laid off by December 22, 1982, the Company contend-

ed that none of the employees had met the alleged second vacation eligibility criterion of working "one additional day" in 1983.

The Union contended that the only vacation eligibility requirement set forth in Section Three is that the employee work at least 120 days in the twelve months preceding the first normally scheduled vacation closedown period. It contended that Section Three's phrase, "[e]mployees on the payroll as of the starting date of the vacation period," is simply a timing provision for when vacations must be taken.[1]

After a hearing, the arbitrator ruled in favor of the Union. His lengthy decision notes that Section Three does not explicitly state that a second requirement for paid vacation is that an employee work at least one day during the calendar year in which the vacation closedown periods are scheduled. Instead, the dispute turned on whether Section Three's ambiguous words "vacation period" meant, as the Company contended, the calendar year during which the vacation closedown periods are scheduled, or, as the Union contended, the vacation closedown period itself. The arbitrator concluded that the Union's construction of "vacation period" had the most merit under the language of the contract, the parties' bargaining history, and the awards of several other arbitrators in similar cases. He agreed that the employees earned their vacation pay by completing 120 days of work during the required period, and that the fact the plant closed before the vacation closedown period did not bar them from receiving vacation pay in lieu of their normally scheduled vacation.

The Company then filed this action in the district court seeking to set aside the arbitrator's award. The district court, 583 F.Supp. 239, granted the Company's motion for summary judgment and the Union appeals.

## II. DISCUSSION.

The United States Supreme Court has recently reiterated the standard of review

in suits to enforce or set aside an arbitration award pursuant to a collective bargaining agreement:

[A] federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one. *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424, 46 LRRM 2423 (1960). When the parties include an arbitration clause in their collective bargaining agreement, they choose to have disputes concerning constructions of the contract resolved by an arbitrator. Unless the arbitral decision does not "dra[w] its essence from the collective bargaining agreement," id., at 597, 80 S.Ct. at 1361, a court is bound to enforce the award and is not entitled to review the merits of the contract dispute. This remains so even when the basis for the arbitrator's decision may be ambiguous. Id. at 598, 80 S.Ct. at 1361.

*W.R. Grace & Co. v. Local 759, Int'l Union of Rubber Workers*, 461 U.S. 757, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983).

Several recent decisions of this Court have reaffirmed and applied this narrow standard of review. *United Electrical, Radio and Machine Workers of America, Local 1139 v. Litton Microwave Cooking Products, Litton Systems, Inc.*, 728 F.2d 970, 115 L.R.R.M. 2633 (8th Cir.1984) (en banc); *Lackawanna Leather Co. v. United Food & Commercial Workers*, 706 F.2d 228 (8th Cir.1983) (en banc); *Abernathy v. United States Postal Service*, 740 F.2d 612 (8th Cir.1984); *Zeviar v. Local No. 2747*, 733 F.2d 556 (8th Cir.1984); *International Brotherhood of Electrical Workers, Local Union No. 53 v. Sho-me Power Corp.*, 715 F.2d 1322 (8th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1277, 79 L.Ed.2d 682 (1984); *Graham's Service Inc. v. Teamsters Local 975*, 700 F.2d 420 (8th Cir.1982); *United Food & Commercial Workers, Lo-*

---

**1.** The Company closed the plant twice a year and required that eligible employees take their

vacations at those times.

cal No. 222 v. Iowa Beef Processors, Inc., 683 F.2d 283 (8th Cir.), cert. denied, 459 U.S. 1088, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982).

The Company's argument is that the arbitrator so clearly misconstrued the collective bargaining agreement and the parties' bargaining history that his decision does not "draw its essence" from the agreement. However, the Company does not cite and our independent research fails to reveal any decisions of this Court or of the Supreme Court vacating an arbitration award on the ground the arbitrator grossly erred in construing the collective bargaining agreement.[2]

In United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 598–99, 80 S.Ct. 1358, 1361–62, 4 L.Ed.2d 1424 (1960), the Supreme Court rejected a similar argument that the arbitrator's decision did not draw its essence from the contract because his interpretation was clearly erroneous under correct principles of contract law. In Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960), the Court was still more emphatic that "judicial inquiry under section 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator the power to make the award he made."

We followed these principles in our recent decision in Abernathy, 740 F.2d at 617 where we held "that the arbitrator's award

was final under the terms of the collective bargaining agreement * * * precludes review of the correctness of [the] arbitrator's decision * * *." See also Zeviar, 733 F.2d at 559. ("Our review of the award is limited to whether the collective bargaining agreement gave the Board authority to make its award as it did.") Similarly, in Bieski v. Eastern Auto Forwarding Co., 396 F.2d 32, 38 (3rd Cir.1968), the United States Court of Appeals for the Third Circuit stated:

If the court is convinced both that the contract procedure was intended to cover the dispute and, in addition, that the intended procedure was adequate to provide a fair and informed decision, then review of the merits of any decision should be limited to cases of fraud, deceit, or instances of unions in breach of their duty of fair representation.

The Company does not allege or produce any evidence that the arbitrator's decision was induced by fraud or deceit.[3]

Despite the precedent from the Supreme Court and this and other Circuit Courts, the Company argues that we should adopt the rule applied in some Circuits that an arbitration award may be set aside on its merits where "the record before the arbitrator reveals no support whatever for his determination * * *." Detroit Coil v. IAM, 594 F.2d 575, 581 (6th Cir.), cert. denied, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979). See also, Kane Gas Light & Heating v. International Brotherhood of Firemen and Oilers, Local 112, 687 F.2d 673, 678

**2.** The Company cites St. Louis Theatrical Company v. St. Louis Theatrical Brotherhood Local 6, 715 F.2d 405 (8th Cir.1983), but that decision is inapposite. In that case, we affirmed the district court's order vacating an arbitrator's award where the arbitrator disregarded contract language explicitly limiting his authority. In contrast to the instant case, we noted in that case that: "the arbitrator's award is not the result of his interpretation of the agreement within the context of a specific set of facts." Id. at 409. Instead, the arbitrator found that the employee had violated the agreement's clause prohibiting work stoppage, but in express disregard of a contractual provision leaving to the employer the remedy for such violation, found

that the remedy was too harsh under general principles of fairness.

**3.** The Company does contend, however, that the arbitrator's award is so clearly wrong that we should reverse under the dicta from Enterprise Wheel, 363 U.S. at 597, 80 S.Ct. at 1361, that an arbitrator "does not sit to dispense his own brand of industrial justice" and "when the arbitrator's words manifest an infidelity to his obligation, courts have no choice but to refuse enforcement of the award." Even if we assume for purpose of argument that the arbitrator's award is clearly erroneous, we find no evidence to support the Company's contention that the arbitrator ignored the evidence and simply dispensed "his own brand of industrial justice."

(3rd Cir.1982), *cert. denied,* 460 U.S. 1011, 103 S.Ct. 1251, 75 L.Ed.2d 480 (1983). ("We hold that a labor arbitrator's award does 'draw its essence from the collective bargaining agreement' if the interpretation can in any rational way be derived from the agreement viewed in light of its language, its context, and any other indicia of the parties' intention.")

■ However, we find no need to decide today whether we should adopt this rule because, even if we did, we cannot agree that "the record before the arbitrator reveals no support whatever for his determination." No provision of the parties' collective bargaining agreement expressly provides that there are two requirements for receiving paid vacation. Instead, the dispute turned on the construction of the ambiguous term "vacation period." The arbitrator's decision sets forth a rational basis for his conclusion that the term "vacation period" could not be construed to mean, as contended by the Company, the calendar year during which the vacation closedown periods are scheduled. We cannot conclude that his decision that the employees who completed 120 days of work after July 22, 1982 were entitled to vacation pay for 1983 under Article 13, Section Three of the collective bargaining agreement, is without any support in the record.

■ We also reject the Company's contention that we should affirm the order vacating the arbitrator's award because the award is inconsistent with a second arbitrator's earlier award construing identical contract language, albeit in a case involving a different contract and a different union. The Company cites *Connecticut Light and Power Co. v. Local 420,* 718 F.2d 14 (2d Cir.1983), but that case, if anything, supports the Union's position. There, the Court was faced with the issue whether the district court properly vacated an arbitration award which required the employer to cease and desist from making assignments of less than three-man crews where a later arbitration award involving the same parties and the same contract provided that silence in the collective bargaining agree-

ment as to transformer work implied that the three-man crew was not mandatory in each case. The Court noted that: "Courts reviewing arbitration awards have generally concluded that arbitrators are not bound by the rationale of earlier decisions * * * that inconsistency with another award is not enough in itself to justify vacating an award * * * [and] that neither award will be set aside where both draw their essence from the collective bargaining agreement." *Id.* at 20. The Court concluded that both awards drew their essence from the collective bargaining agreement but that on the unique facts of the case, one award had to be vacated because the employer could not comply with both orders at the same time. It upheld the award which it believed best reflected the intent of the parties. Here there is no compliance problem.

In sum, the arbitrator's decision "draws its essence from the collective bargaining agreement" and must be enforced.

Reversed and remanded for entry of judgment.