624 F.Supp. 880 (1985)
TRAILWAYS LINES, INC., Plaintiff,
v.
TRAILWAYS, INC. JOINT COUNCIL, Defendant.
No. 85-1249C(B).
United States District Court, E.D. Missouri, E.D.
December 16, 1985.
Leonard Singer, Kansas City, Mo., for plaintiff.
Stephen Domesick, Boston, Mass., for defendant.

MEMORANDUM OPINION AND ORDER
REGAN, District Judge.
This is an action to vacate an arbitration award which requires plaintiff (Trailways Lines, Inc., hereafter Trailways) to cease enforcing its "no-beards" policy prohibiting those of its garage employees who have some contact with the public from wearing beards. Defendant (Trailways, Inc. Joint Council, hereafter union) has counterclaimed for enforcement of the award. Both parties have moved for summary judgment.
This is the second time the same union had chosen to arbitrate the issue of the reasonableness of Trailway's no-beards policy pursuant to the same collective bargaining agreement. The first award, rendered August 8, 1984 by Arbitrator David Lande, held that the policy was "reasonable" and sustained the right of Trailways to enforce it. The second award, rendered by Arbitrator Peter Maniscalco under date of February 28, 1985, was based on his conclusion *881 that the "no-beards" policy was "unreasonable", and so was not enforcible. The facts and circumstances involved in both arbitration proceedings were identical in all material respects.
The major thrust of Trailways' motion for summary judgment is that the Lande award, which, by the specific terms of the labor contract, is "final and binding" upon the parties, is res judicata and precludes the union from again grieving and obtaining an award from Arbitrator Maniscalco which is contrary to and cannot be reconciled with (and which ignores the finality and binding effect of) the earlier, Lande, award.
By way of background: Trailways is an interstate motor carrier of passengers and freight throughout the United States. The business in which it is engaged is highly competitive, with substantial competition being furnished not only from national motor carriers such as Greyhound Bus Lines and various regional bus lines but also from airlines (particularly since they were deregulated) and from the rail system. In the view of Trailways management not only the appearance of its equipment but the appearance of its personnel who have any contact with the public, creates an "image" which may affect its ability to attract and keep the maximum number of customers to use its facilities. For that reason it adopted (and has for years maintained) its "no beards" policy as part of its growing standards applicable to all employees who in the course of their employment have some contact with the public.[1] It is the reasonableness of this no-beards policy within the meaning of Section 144 of the national collective bargaining agreement which was the subject of both grievances submitted to arbitration by the union.
This collective bargaining agreement, effective as of April 1, 1983, was the first national collective bargaining agreement between Trailways and the union. Prior thereto, their agreements were negotiated on a regional basis on behalf of the local unions having jurisdiction in such region. Section 144 of the national agreement provides as follows:
"STANDARDS OF APPEARANCE The employees shall comply with the reasonable standards of personal appearance regulations issued by [Trailways] and such reasonable amendments as shall be adopted by [Trailways] not contrary to or in conflict with the terms of this Agreement." A further provision of the national agreement, stressed by Trailways, is Section 132(b) which states that "[Trailways] shall continue to enjoy those past practices which previously were observed in individual Seniority Units."[2]
Preliminary to his decision on the merits, Arbitrator Lande first held that the union's grievance required a construction of Section 144 of the national contract, that Section 144 permitted a grievance "as to the reasonableness of any issued standard of public appearance, including the no-beards policy here in issue", and that such a grievance "is resolvable ultimately in arbitration."
Prior to arriving at his conclusion as to the reasonableness of Trailways "no beards" rule within the purview of Section 144, Arbitrator Lande took specific note of the "obvious" concern of Trailways with the issue of "image" and its "understandable" desire, as a business matter, to project that certain "image" which in its opinion will most favorably impact upon the balance *882 sheet ... in these times of intense "competition." Arbitrator Lande then ruled:
"The arbitrator may be inclined to disagree with the ["no beards"] rule, and to believe that its rationale, however good-faith-generated and business-related, is inaccurate in the context of present-day society. The arbitrator may believe that on balance, the employer might better serve its own interests by ascertaining that its customers are not as disturbed by the appearance of beards as it may believe and by accommodating the apparent zeal of a segment of the bargaining unit to sport beards. But the arbitrator is not an officer of Trailways, and may not substitute his own judgment or that of the bargaining unit or the union, where, as here, he can not find that the rule or its application in the particular circumstances here relevant rises to the status of unreasonable".
Having so ruled, Arbitrator Lande specifically held that as applied to garage employees who have some indeterminate public contact the no-beards rule was not unreasonable (and hence, by clear and necessary implication) that Trailways had not violated the labor agreement. On the basis of this ruling, Arbitrator Lande made the following award:
"The grievance of the garage employees of Trailways Southeastern respecting their objection to the reasonableness of existing standards and rules of personal appearance which preclude the wearing of beards except in specified circumstances of medical necessity is denied."
Dissatisfied with the result of the Lande arbitration, the union (represented by the same attorney who had prosecuted the earlier arbitration proceeding) obtained arbitration of the grievance of two garage mechanics employed at the St. Louis garage[3] who had involuntarily shaved their recently grown beards to avoid possible disciplinary action.
The following issue formulated by the union was submitted to arbitration before Arbitrator Maniscalco:
"Did the Company (Trailways) violate the Collective Bargaining Agreement when, in March, 1984, it required employees Anders and Christopher, mechanics in the St. Louis garage, to shave off their beards? If so, what should be the remedy?"
Unquestionably, the basic issue submitted by the union to arbitration in both proceedings, namely, whether the "no-beards" policy is unreasonable within the meaning of Section 144 of the National Contract, and the right of Trailways to apply the policy to its garage employees who have some contact with the public, is identical.
Arbitrator Maniscalso's decision on this issue, rendered seven months after the Lande award, was stated in his Opinion as follows:
"We therefore find, that the absolute no-beard rule imposed by [Trailways] violates the Collective Bargaining Agreement under 144 of the National Contract as it applies to the Collective Bargaining Unit employees of [Trailways] because it was unreasonable in light of the fact that the employer presented no proof of the public's real attitude and reaction as well as proof of any demonstrable relationship between those attitudes and the positive public image the Company wished to portray."
It is thus apparent that the thrust of Arbitrator Maniscalco's decision is that irrespective of management's good-faith business judgment as to the desirability of its no-beards policy, the policy (without proof of the effect of the policy on the grievants) is prima facie unreasonable, thereby placing an almost impossible burden upon the employer to prove by the preponderance of the evidence that its business judgment as to the favorable impact of a no-beards policy upon its ability to cope with competition has a substantial objective, *883 factual, evidentiary basis. On the other hand, the earlier decision of Arbitrator Lande focused on the prerogative of management to adopt policies and rules not on their face unreasonable which in the judgment of management could reasonably be deemed by it to further the company's image in the face of intense competition.
As the "remedy" for Trailway's violation of the Collective Bargaining Agreement by its requirement that the two St. Louis garage employees Anders and Christopher shave off their beards, Arbitrator Maniscalco made the sweeping pronouncement that "[Trailways] shall forthwith cease to enforce its grooming policy as it applies to an absolute no-beard requirement by employees covered by the National Agreement employed at garage facilities of the Company", with the exception that "[Trailways] has the right to require employees so effected (sic) to maintain a neat and well trimmed beard."
Stated otherwise, the "remedy" prescribed by Arbitrator Maniscalco for requiring St. Louis employees, Anders and Christopher, to shave off their beards was to abrogate Trailways' no-beards policy as to all its garage employees throughout the United States including those employed in its Southeastern Region as to whom Arbitrator Lande had sanctioned the policy.
In this situation we consider the res judicata or preclusive effect of Arbitrator Lande's decision (as distinguished from its precedential effect) upon the union and (conceivably) upon Arbitrator Maniscalco. We have not been cited to, and are not aware of, any definitive ruling of the Court of Appeals for the Eighth Circuit on the precise issue here involved in this very sensitive area of labor arbitration law.
In McGraw-Edison, Wagner Division v. Local 1104, International Union Electrical Workers, 767 F.2d 485 (8 Cir.1985), the Eighth Circuit ruled, adversely to the employer, its claim that a subsequent award should be vacated on the ground it was "inconsistent" with an earlier award, noting that although both arbitrators construed the same contract language in reaching inconsistent results, each proceeding involved a different union and a different contract. In that situation, it is difficult to perceive how the second arbitrator (and the second union) could be bound by the first construction of the language, and the District Court (583 F.Supp. 239, 247) explicitly so held. Here, however, as we have noted (and as Arbitrator Maniscalco impliedly conceded), the prior arbitral proceeding necessitated the construction of the identical contract provision (Section 144) of the same national labor contract between the same employer and the same union, in deciding the merits of a grievance involving the same issue under essentially the same facts and circumstances.
We have carefully read the cases cited by the union in support of the validity of the Maniscalco award. None of them (other than Connecticut Light & Power Co. v. Local 120, I.B.E.W., 718 F.2d 14 (2 Cir. 1983), discussed infra) is factually comparable. Other than W.R. Grace & Co. v. Rubber Workers, Local 739, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (discussed infra) and Connecticut Light & Power Co., no cited case involved the preclusive effect of a first arbitral decision.
Instead, in virtually all of the cited cases one or the other of the parties sought to sidestep its obligations to submit any grievance to arbitration, and the essential issue was either whether a court could enjoin a second arbitrator in advance from deciding the new grievance or whether the court had the authority to compel a party to submit the matter to arbitration as against the contention that a second arbitrator would lack jurisdiction to hear the grievance. No question of the arbitrator's jurisdiction is presented in the instant proceeding. So, too, there is no contention that the second arbitrator is bound by the rationale of previous decisions or their precedential effect (as was contended in McGraw Edison, supra).
It is, of course, true that the question of the interpretation of a collective bargaining agreement is a question for the arbitrator. However, the real issue is *884 whether, once an arbitrator, acting within the scope of his authority, has interpreted the later contract which specifically provides that the decision is "final and binding" upon the parties, the losing party is entitled to obtain a valid and binding contrary interpretation of the same contract from another arbitrator simply because the latter disagrees with the "final and binding" interpretation theretofore made by the first arbitrator.
In W.R. Grace & Co., supra, the Supreme Court assumed, but did not discuss or definitively rule, the binding effect of the prior award. The Court of Appeals for the Fifth Circuit, in 652 F.2d 1248 (1981) (whose decision ruling this case was affirmed) had also assumed that the prior award was binding upon a subsequent arbitrator when the issue involves the same facts and contract provision, if it was within "the jurisdiction and authority" of the prior arbitrator. In enforcing the later award, the Supreme Court (after pointing out that the conclusion of the second arbitrator "that he was not bound by the [earlier] award was based on his interpretation of the bargaining agreement defining the arbitrator's jurisdiction and his perceived obligation to give a prior award a preclusive effect") held that "(b)ecause the authority of arbitrators is a subject of collective bargaining, just as is any other contractual provision, the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator. [The second arbitrator's] conclusions that the [first arbitrator] acted outside his jurisdiction in denying an award to which an employee admittedly was entitled under the specific terms of the collective bargaining agreement simply because the first arbitrator believed it was inequitable to penalize the employer for following an erroneous court decision for which the employee was not responsible and that this (lack of jurisdiction) deprived the first award of precedential effect under the contract draw their essence from the provisions of the collective bargaining agreement", and so the later award may not be vacated.
In the present case, as we have noted, there is and can be no question but that Lande acted within his jurisdiction in interpreting Section 144 of the labor contract and in ruling that Trailways' no-beards policy was "reasonable." What Maniscalco held in his one-sentence sole reference to the Lande award was simply that "the conclusion (therein) that Section 144 of the "National Contract may bear a `reasonable' relation to the employer's marketing decision [and] that therefore, the rule and its application here cannot be deemed `unreasonable' is in this Arbitrator's opinion a minority view."
In effect, what Arbitrator Maniscalco said was that he disagreed with Lande's decision on its merits, preferring to follow what he perceived to be "the better [or "majority"] arbitral view." He neither discussed nor referred to the "final and binding" provision of the contract, but ruled the merits of the matter de novo, without regard to the fact that the underlying circumstances had not changed in the seven-month period since the Lande award was rendered.
In Local 616, International Union of Electrical, Radio and Machine Workers v. Byrd Plastics, Inc., 428 F.2d 23, 26 (3 Cir.1970), the Court stated:
"A clause stating that a decision of an arbitrator is `final and binding' is no doubt intended to establish a principle similar to that of res judicata, and to bar reconsideration of the disputes, fully decided on the merits." What was held in that case was that because the dismissal of the complaint was based on a procedural error, and not "on the merits", reconsideration of the grievance was not barred.
On the other hand, where as here, the prior decision involved the interpretation on its merits of the identical contract provision of the same contract between the same company and the same union, it is self-evident in our judgment that "every principle of common sense, (labor) policy and labor relations demands that (the ruling) stand until it is annulled by the parties by a newly worded contract provision." And on that premise the great majority of arbitrators *885 have considered themselves bound by the earlier decision where there has been no change in the facts and circumstances. In W.R. Grace & Co., supra, the second arbitrator, the Fifth Circuit and the Supreme Court all ruled the controversy on the express assumption that such was the law as applied to the preclusive effect of the first award.
In Connecticut Light & Power Co., supra, 718 F.2d 14, the Second Circuit was confronted with determining the validity of an award requiring the employer to cease and desist certain practices which had been specifically sanctioned by a later award. The second arbitrator had refused to defer to the first award because in his judgment its interpretation of the applicable contract provision was "analytically unsound."[4] In this situation the Court deemed it necessary to select whichever of the two diametrically opposite arbitral interpretations "most nearly conforms to the intent of the parties." The Court then selected the later award because it was "better reasoned" and "the more persuasive."
We do not agree with this approach, the effect of which is to require the Court to act as an umpire. The better course, in our view, is to refuse to sustain a later contrary award which for no legal reason ignores the "final and binding" provision of the contract as applied to a prior award which draws its essence from the contract. It is interesting to note that in Paragraph 2 of its counterclaim seeking judgment requiring Trailways to comply with the order of Arbitrator Maniscalco that Trailways cease enforcing its no-beards policy nationwide, the union quotes and specifically relies on Section 202(g) of the National Contract which mandates that the decision of the arbitrator shall be final and binding on the parties.
As we have noted supra, Arbitrator Maniscalco gave no consideration whatever to the Lande award other than to state that it represents the "minority" view, nor did he even refer to or construe the "final and binding" provision of the contract. It may be speculated that he believes that no decision is final and binding unless it follows what he believes to be the "majority" view even if it draws its essence from the collective bargaining agreement. We add that the awards cited by Arbitrator Maniscalco in his Opinion as representing the "majority" view (including his own decision in Missouri Public Service Company, 77 L.A. 973, do not involve "image" either as affected by competition or as affected by the type of intense competition such as Trailways faces. In our judgment, Arbitrator Maniscalco was simply dispensing his own brand of industrial justice.
We are also of the opinion that where, as here, an arbitrator (as Lande) has definitively construed a provision of the collective bargaining agreement, such construction becomes part of the existing labor agreement, and hence is subject to the provision thereof (Section 202(g)) that an arbitrator "shall have no power to alter or amend the provisions of (the) contract in any respect." Arbitrator Maniscalco wholly failed even to consider or rule this issue.
We also hold that Arbitrator Maniscalco exceeded his authority in providing a "remedy" which was not warranted by the terms of the submission. The sole issue for his determination was whether Trailways was justified in ordering the two grievants to shave their beards and if not, what should be the remedy for the employer's breach of contract. In every award called to our attention, the remedy was limited to what the arbitrator reasonably believed would restore the grievants to the position they would have been in but for the employer's breach of contract. Here, however, Arbitrator Maniscalco completely ignored the issue as formulated by the union and issued a cease and desist order applicable nation-wide to all garage employees including those expressly covered by the Lande award.
It follows from the foregoing that the motion of the union for summary judgment *886 enforcing the award should be and it is HEREBY DENIED. The motion of Trailways for summary judgment vacating the award should be and it is HEREBY SUSTAINED. Judgment will be entered in accordance herewith.
NOTES
[1] The policy was modified several years ago in compliance with a decision of the District Court of Colorado in EEOC v. Trailways, 530 F.Supp. 54, 59 (1981), a Title VII racial discrimination case, which required Trailways to "slightly" modify the policy by making accommodation for persons who can provide a medical certificate that they are afflicted with an ailment which medically requires abstinence from shaving and whose (neatly trimmed) beard is worn at the shortest length which will satisfy the medical need of the employee. There is no contention that either grievant has such an ailment.
[2] In Section 132(a), a similar right is granted to the employees "to enjoy those past practices which were enjoyed by them in individual Seniority Units."
[3] The grievance arbitrated before Arbitrator Lande was filed by the union on behalf of all garage employees in the Southeastern Region. The St. Louis garage (apparently) is in another region.
[4] Nothing in the Court's opinion indicates that the contract contained a "final and binding" provision.