**TRAILWAYS LINES, INC., Appellee,**

v.

**TRAILWAYS, INC. JOINT COUNCIL, Appellant.**

**No. 86–1071.**

United States Court of Appeals, Eighth Circuit.

May 11, 1987.

Stephen R. Domesick, Boston, Mass., John L. Davidson, Jr., St. Louis, Mo., for appellant.

Leonard Singer and Erik D. Eike, Kansas City, Mo., Michael Kaemmerer, St. Louis, Mo., for appellee.

**Order Denying Petition for Rehearing En Banc**

The petition for rehearing en banc has been considered by the court and is denied by reason of the lack of majority of active judges voting to rehear the case en banc.

HEANEY, Circuit Judge, with whom LAY, Chief Judge, and McMILLIAN and ARNOLD, Circuit Judges, join, dissenting.

The petition for rehearing en banc should be granted. The panel opinion is contrary to the law of this Circuit and to the decisions of the United States Supreme Court.[1]

The panel rejects the arbitrator's award claiming that it fails to draw its essence from the collective bargaining agreement. It is clear, however, that the panel did so because it disagrees with the arbitrator's construction of Section 144 of the national collective bargaining agreement (or "National Agreement"). A review of the record makes this point clear.

The parties stipulated to the issue before Arbitrator Peter Maniscalco: "Did the Company violate the Collective Bargaining Agreement when, in March, 1984, it re-

---

1. *W.R. Grace and Co. v. Local Union 759, International Union of United Rubber Workers,* 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983); *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Lackawanna Leather Co. v. United Food & Commercial Workers,* 706 F.2d 228 (8th Cir.1983) (en banc); *McGraw Edison, Wagner Division v. Local 1104 International Union,* 767 F.2d 485 (8th Cir.1985).

quired employees Anders and Christopher, mechanics in the St. Louis Garage, to shave off their beards? If so, what should be the remedy?" The resolution of this issue required an interpretation of numerous provisions of the National Agreement between the parties, particularly Section 144, which provided:

> SECTION 144. STANDARDS OF APPEARANCE—The employees shall comply with the reasonable standards of personal appearance regulations issued by the Company and such reasonable amendments as shall be adopted by the Company, not contrary to or in conflict with the terms of this Agreement.
>
> In the event of a bona fide doubt as to whether an employee has complied with the Company's standards on personal appearance the matter shall be processed by an official of the Union and an official of the Company before a decision is made.[2]

The arbitrator heard the dispute on November 7th and 8th, 1984. Each party called several witnesses and offered a number of exhibits, including the collective bargaining agreement and relevant Company rules and policy statements. At the conclusion of the testimony, a transcript was prepared, and the parties submitted post-hearing briefs and, after a careful and thorough review, the arbitrator handed down a detailed twenty-one page award on February 8, 1985.

The arbitrator summarized the testimony of the witnesses. Union witnesses testified that, prior to the negotation of the National Agreement, garage employees in certain seniority units were permitted to wear beards; that this practice continued after the National Agreement was negotiated; that Section 144 of the National Agreement was intended to establish national personal appearance standards; that the standards had to be reasonable; and that the no-beard requirement did not meet this standard as applied to garage mechanics. Designated Record (D.R.) at 46–48.

Company witnesses testified that both before and after the signing of the National Agreement the Company had policies prohibiting garage mechanics from wearing beards, primarily to preserve the Company image. The Company witnesses testified that mechanics were frequently called up to meet passengers. According to the testimony, the Company believed bearded mechanics might offend passengers, although no studies or surveys had been undertaken to determine whether the Company's image had in fact been affected and although no complaints had been received. The witnesses testified that the no-beard policy was generally enforced when violations came to the attention of the Company and that the Company did not intend Section 144 to change Company policy. D.R. at 48–52.

The arbitrator then stated the contentions of the parties. He first summarized those of the Company:

> [1] [T]he · arbitration award issued by Arbitrator, David S. Lande on August 8, 1984 disposes of the issues in this case.
> * * *
>
> [2] * * * [T]he Union['s] [argument] that the history of the negotiations leading to the new National Contract evidences an Agreement that the Company's prohibition on beards did not apply to mechanics * * * is clearly wrong. * *
>
> [3] * * * The Company is concerned with the issue of image[.] * * * The issue * * * [is thus] "reduced to whether the application of the no-beard rule to the circumstances here involved constitutes a reasonable regulation." * * *
>
> [4] * * * [O]nly the reasonableness of the [no-beard] rule is arbitrable; that the concept of reasonableness is narrower than that of desirability or merit.

---

**2.** Arbitrator Maniscalco also considered additional provisions of the contract including: 1) From the agreement—Section 103, Management Prerogative; Section 132, Past Practice; Section 144, Standards of Appearance; and Section 932, Garage Department—Definitions; 2) From the Rule Book for Maintenance Employees—Section 12, Personal Habits; 3) From Joint Exhibit No. 4—Section 154, Standards of Appearance, and Maintenance Department Policy Bulletin S–3 Rev. A, December 5, 1980, entitled "Employee Personal Appearance."

[5]  * * * [I]n public contact cases, arbitrators have permitted discipline or discharge where it was shown that the employee's appearance was detrimental to the Company's image.  * * * [T]he Union has the burden of proving that the Company's no beards rule was unreasonable.

*  *  *  *  *  *

[6]  * * *  "[I]ndeterminite contact" was sufficient to preserve reasonableness of the rule.

[6]  The image which the mechanic projects to passengers will influence their perception as to the quality of the Company's maintenance and their trust in the safety of the Company's equipment.

Hence, the Company's rule is related to material aspects of its business operations and is therefore reasonable.

D.R. at 52–53.

He then listed the Union's contentions:

[1]  [T]he employer may properly impose certain dress standards relevant to its business operation * * * [but] there are limits beyond which the intrusion into personal life style is sufficiently great and the business need sufficiently tenuous that the standard may not be considered reasonable.

[2]  There must be a showing of a reasonable relationship between the Company's image or health and safety considerations and the need to regulate employee appearance.  Therefore, management's rights to regulate in this area is not absolute.

[3]  * * * [W]ork rules must be reasonable not only in their content but also in their application, and the test of reasonableness of a work rule "is whether or not the rule is reasonably related to a legitimate objective of management."

[4]  * * * [L]imitations placed on the growing of facial hair have the effect of regulating the conduct and appearance of the employee both on and off duty and would constitute an infringement on the personal freedom of the employee.  Consequently, the Company's desire to portray a favorable image must be balanced against the employee's right to be free of unreasonable limitations on his conduct.

*    *    *    *    *    *

[5]  * * * [E]mployers [must] present proof of the public's real attitude and reaction, as well as proof of a demonstrable relationship between those attitudes and the rules intended to nurture a positive public image.

*    *    *    *    *    *

[6]  * * * [T]he Company has failed to present any evidence by which the Arbitrator "may conclude that the intrusion into personal preference has been justified by any demonstration of reasonable business necessity."

*    *    *    *    *    *

[7]  * * * [T]he decision of Arbitrator Lande does not resolve the contractual issues presented in this dispute.  The principles of *stare decisis* and *res adjudicata* do not have the same doctrinal force in arbitration proceedings as they do in judicial proceedings.  [Thus], based upon the evidence adduced at the hearing and upon the arguments made herein, that the Company has violated the Bargaining Agreement when, in March, 1984 it required employees Anders and Christopher, mechanics in the St. Louis Garage, to shave off their beards.

D.R. at 54–56.

Finally, the arbitrator set forth his holding:

[1]  [T]he parties negotiated the National Contract and more specifically Section 144 dealing with grooming standards, with a view that its grooming standards would be on a national standard as opposed to a local standard and this requires the Company to impose a reasonable standard nationwide in its enforcement of its grooming policy.

D.R. at 60–61.

[2]  [T]here must be a showing of a reasonable relationship between the Company's image or health and safety considerations and the need to regulate employee appearance.  Therefore, management's right to regulate in this area is not absolute and its exercise in any specific man-

ner may be challenged as arbitrary, capricious or inconsistent with the objective for which the right is being exercised. D.R. at 60.

[3] [T]he absolute no-beard rule imposed by the Company violates the Collective Bargaining Agreement under [Section] 144 of the National Contract as it applies to the Collective Bargaining Unit employees of the Company because it was unreasonable in light of the fact that the employer presented no proof of the public's real attitude and reaction as well as proof of any demonstrable relationship between those attitudes and the positive public image the Company wished to portray.

D.R. at 61.

In my view the award clearly drew its essence from the National Agreement. Nothing further is required. We cannot set aside an award because we disagree with the result reached or with the arbitrator's application of the law or assessment of the facts.[3] *See W.R. Grace & Co. v. Local Union 759, International Union of United Rubber Workers,* 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983).

Rather than meet the real issue head on, the panel advances a number of collateral arguments intended to cast doubt on the arbitrator's award:

1. *The arbitrator's analysis is, in large part, a verbatim copy of his award in an earlier case, Missouri Public Service Co.,* 77 Lab.Arb. (BNA) 973 (1981).

Such reliance is not uncommon in this litigious age in which courts repeatedly face similar disputes. Indeed, the panel's discussion of the law of reviewability of arbitrators' awards is nothing more than a restatement of principles articulated in numerous prior decisions. Such reliance, of course, makes the principles articulated no less true. Moreover, even if the arbitrator unduly relied on a previous decision, that has no relevance to our review. The only

requirement is that an arbitrator's award draw its essence from the contract and here it plainly did.

2. *The arbitrator ignored Sections 103, Management Prerogatives, and 132, Past Practices.*

There is no support in the record for this contention. The arbitrator stated in the award that both sections were pertinent. He discusses the dispute over the nature of past practice and credits the Union testimony contending that Section 144 of the National Agreement was intended to establish a *new* national standard of reasonableness with respect to personal appearance thus indicating that past practice was not to be controlling. He deals with the management prerogatives when he states:

[T]he Company has a right to require its employees to cut their hair and shave, when long hair and beards can reasonably threaten the Company's relations with its customers. * * * However, there must be a showing of a reasonable relationship between the Company's image or health and safety considerations and the need to regulate employee appearance. Therefore, management's right to regulate in this area is not absolute. Its exercise in a specific manner may be challenged as arbitrary, capricious or inconsistent with the objective for which the right is being exercised.

D.R. at 57.

3. *The arbitrator did not consider whether Lande's interpretation of Section 144 effectively became a part of the National Agreement and, therefore, was not subject to alteration or amendment under Section 202(g).*

This assertion is belied by the award. Maniscalco specifically considered the Lande award and rejected it. He stated, in substance, that Lande's view, that the Company could enforce the "no-beard rule" as long as it believed in good faith that the rule was reasonably related to the objective

---

**3.** The arbitrator placed the burden of proving the reasonableness of the regulation on the Company. The Company argues strenuously that the Union had the burden of proving unreasonableness. Whether this Court agrees or disagrees with the arbitrator is not material; it is for the arbitrator to decide where the burden of proof lies unless the contract specifically assigns this burden.

of protecting the Company's image, was a minority view and would not be accepted by him. He rather took the view that, although the Company could adopt standards of appearance which were reasonably related to Company objectives, the Company still had to prove that the relationship in fact existed. He found no proof of such relationship.

The panel obviously prefers the result reached by Lande. Had the Union sought to set aside that award in this Court, I would have joined the panel in rejecting its request. In my view, the Lande award also drew its essence from the National Agreement.

There are two additional matters which deserve comment: First, the late and distinguished District Judge John K. Regan decided this case on the ground that the Lande award became part of the contract between the parties and that Maniscalco had no authority to change the terms of the contract by rendering an entirely different interpretation of the clause in question. While an argument can be made for the view expressed by Judge Regan, I am inclined to agree with the Circuits that have rejected it.[4] The First Circuit faced this issue in *Westinghouse Elevators v. S.I.U. de Puerto Rico*, 583 F.2d 1184 (1st Cir. 1978). It stated:

> This case presents the question of whether an arbitration award, which is directly contrary to a prior award covering the same collective bargaining contract provision, is, for that reason, subject to judicial review and should be set aside as being outside the authority of the arbitrator. * * *
>
> * * * * * *
>
> Appellant insists that the issue is not "res judicata" or "stare decisis" and we agree. The issue is whether the award was outside the authority of the arbitrator or his conduct was so improper as to warrant judicial review. * * *
>
> * * * * * *

The general doctrine concerning the effect of prior arbitration awards and how they differ from judicial precedent was clearly stated by arbitrator Jules J. Justin in *Federal Bearings Co., Inc.*, 22 L.A. 721, 725–727 (1954):

> Unless the Parties agree otherwise in their contract, an arbitrator's award rendered in a prior arbitration proceeding—even between the same parties— does not stop either party from raising the same issue in a subsequent arbitration; nor does it bar the arbitrator from determining the same or a similar issue anew. The arbitrator may consider prior awards between the same parties or between other parties if offered in the proceeding before him, but he is not bound to follow them.
>
> * * * * * *

The attempt by the appellant to embody the first award in the collective bargaining contract and thus shield it from the arbitrator's authority raises an interesting issue, but cannot change the result in this case. * * * This is especially true given the arbitrator's special expertise at filling gaps in the meaning of a written collective bargaining agreement. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 579–581, 80 S.Ct. 1347, [1351–52], 4 L.Ed.2d 1409 (1960). But it is not our task to interpret this contract. It is the arbitrator's job. As explained in *Bettencourt v. Boston Edison Co., supra*, 560 F.2d at 1045 [1st Cir. (1977)], arbitrators are not bound to follow judicial rules of construction and interpretation. An arbitrator who interprets a contract differently from a court has not necessarily exceeded his authority by modifying the contract. We cannot say the intent of the parties was so clear in this case that the arbitrator's interpretation was "unfounded in reason and fact." *Id.* at 1049.

583 F.2d at 1185–87.

The position of the First Circuit is persuasive. If the parties wanted to give pre-

**4.** *Butler Armco Independent Union v. Armco Inc.*, 701 F.2d 253 (3d Cir.1983); *Bacardi Corp. v. Congreso de Uniones Industriales*, 692 F.2d 210 (1st Cir.1982) (following *Westinghouse Elevators of Puerto Rico v. S.I.U. de Puerto Rico*, 583 F.2d 1184 (1st Cir.1978)); *Riverboat Casino, Inc. v. Local Joint Executive Board of Las Vegas*, 578 F.2d 250 (9th Cir.1978).

clusive effect to arbitration awards, they could have mandated that result in their collective bargaining agreement.

There are additional reasons for not giving preclusive effect to the first arbitration award in this case. Here, the Union submitted two sets of grievances. The parties could not resolve the disputes in the grievance procedure, and both parties asked the American Arbitration Association to designate arbitrators to hear the disputes. Neither party made a motion to consolidate the grievances for hearing although there was time to do this. The second set of grievances was not submitted to arbitration until after the first award had been handed down. The Company made no effort to have the arbitration proceeding set aside before the second arbitration hearing was held and did not object to the jurisdiction of the arbitrator at the opening of that hearing. It apparently was so confident in the result that it wanted to have Maniscalco confirm the award of Lande and thus nail down its victory. The Company should not now be permitted to reject Maniscalco's award simply because it is not the result they had anticipated.

Second, Judge Regan held that "Arbitrator Maniscalco exceeded his authority in providing a 'remedy' which was not warranted by the terms of the submission." D.R. at 101. The panel avoids this issue, having ruled in the Company's favor on the broader question. I agree with the district court that Maniscalco exceeded his authority in stating that the Company "should forthwith cease to enforce its grooming policy as it applies to an absolute no-beard requirement by employees covered by the National Agreement employed at garage *facilities* of the Company." D.R. at 61 (emphasis added). As the district court noted, "The sole issue for [Maniscalco's] determination was whether Trailways was justified in ordering the two grievants to shave their beards and if not, what should be the remedy for the employer's breach of contract." D.R. at 101. The remedy should have been limited to that necessary to resolve the grievance before the arbitrator. *See Connecticut Light & Power Cop. v. Local 420, International Brotherhood of Electrical Workers,* 718 F.2d 14 (2nd Cir.1983); *New Orleans Steamship Association v. General Longshore Workers,* 626 F.2d 455 (5th Cir.1980).

For the reasons stated, I would grant the petition for rehearing en banc.