# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 96-1451

_____

| | | |
|---|---|---|
| American National Can Company, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| United Steelworkers of | * | Eastern District of Missouri |
| America; Local No. 3628, | * | |
| United Steelworkers of | * | |
| America, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: November 22, 1996

Filed:     July 25, 1997

_____

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
       BOGUE,* District Judge.

_____

McMILLIAN, Circuit Judge.

_____

*The Honorable Andrew W. Bogue, United States District Judge
for the District of South Dakota, sitting by designation.

American National Can Company (ANC) appeals from a final order entered in the United States District Court[1] for the Eastern District of Missouri granting summary judgment in favor of United Steelworkers of America (USWA) and United Steelworkers of America, Local No. 3628 (Union) (together "defendants") and enforcing an arbitrator's award which held that ANC violated the "contracting out" provision of the parties' collective bargaining agreement (CBA) by transferring certain work and equipment from one ANC plant to another ANC plant. American Nat'l Can Co. v. United Steelworkers, No. 4:94 CV 2473 (E.D. Mo. Jan. 5, 1996) (hereinafter "slip op."). The district court ruled that the arbitrator's award draws its essence from the CBA and that the arbitrator was not bound by two prior arbitration awards involving the application of the same clause of the CBA. Slip op. at 5. For reversal, ANC argues that the district court erred in enforcing the arbitrator's award. For the reasons discussed below, we affirm.

## I.  Background

The underlying facts are undisputed. ANC operates a can manufacturing plant in St. Louis, Missouri (the St. Louis plant), for which USWA is the exclusive collective bargaining representative for ANC's St. Louis employees. The CBA, currently in effect from February 22, 1993, through February 22, 1998, includes, among other provisions, an agreement that disputes arising under the CBA will be submitted to grievance and arbitration procedures, a management reservation of rights provision, and a "contracting out" prohibition (Article 3.3) stating in part that "[t]he Company will not contract out work which is normally performed by employees at the particular location when there is appropriate equipment, skills, necessary time and qualified employees to perform such work."

---

[1]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

In September 1993, ANC notified the Union that it was going to transfer the coffee can end and sanitary can end work from its St. Louis plant to its plant in Hoopeston, Illinois (the Hoopeston plant). The equipment for performing this work was to be dismantled and removed from the St. Louis plant, and reassembled at the Hoopeston plant. Both the St. Louis plant and the Hoopeston plant are ANC facilities, but employees at the Hoopeston plant are not represented by a labor organization.

The transfer of work and equipment took place in October 1993. As a result of the transfer, fifty to sixty bargaining unit employees were adversely affected and several employees were laid off. The Union filed a grievance asserting that this transfer of work and equipment violated Article 3.3, the contracting out prohibition, among other provisions of the CBA. The dispute was not settled through grievance procedures, and the Union sought arbitration. The matter was submitted to Arbitrator John J. Mikrut, Jr. (hereinafter "the arbitrator" or "Arbitrator Mikrut").

At the arbitration hearing, held on June 22, 1994, the Union argued that ANC had violated applicable provisions of the CBA, including Article 3.3, when it transferred the coffee can end and sanitary can end work from the St. Louis plant to the Hoopeston plant. In response, ANC argued that the arbitrator was required, according to principles of res judicata, to follow two prior arbitration awards, American Nat'l Can Co. (Hammond Plant) v. United Steelworkers, Gr. No. 41-89 (Feb. 20, 1993) (Mikrut, Arb.), and American Can Co. (Vancouver Plant) v. United Steelworkers, Local 2821, Gr. No. 002-9-79 (Mar. 29, 1980) (Cole, Arb.), each of which held that a certain intra-company transfer of work did not violate Article 3.3, as identically contained in an earlier version of the CBA. Arbitrator Cole, in his 1980 decision, found that ANC had not violated the contracting out provision when it manufactured cans at its unionized Vancouver plant by utilizing metal sheets which had already been decorated at one of its non-union facilities in Canada. Arbitrator Mikrut, in his 1993 decision, similarly found that ANC had not violated the contracting out provision when it had machinery, which had been produced at a non-union facility, repaired at the non-union facility

rather than at its unionized Hammond plant where the machinery had been in operation. Thus, ANC argued, because those two prior arbitration awards involved the same parties, the same language of the CBA, and similar facts, Arbitrator Mikrut was bound in the present case to hold that the transfer of the coffee can end and sanitary can end work and equipment did not qualify as contracting out within the meaning of Article 3.3 of the CBA.

On September 30, 1994, the arbitrator found that ANC had violated Article 3.3 of the CBA. United Steelworkers v. American Nat'l Can Co., Gr. No. 93-55 (Sept. 30, 1994) (Mikrut, Arb.) (hereinafter "Mikrut 1994 Decision"). He considered the two prior arbitration awards cited by ANC but nevertheless concluded that "[ANC's] argument must be rejected because the Union's counter-argument that '. . . intra-corporate transfers of work' are encompassed within the sub-contracting prohibition of Article 3.3, is significantly more persuasive, *within the context of the instant dispute*, than that which has been adduced by [ANC] herein." Id. at 20-21 (emphasis added). The arbitrator explained in full:

> This conclusion, although seemingly inconsistent with this Arbitrator's previous Award . . ., nonetheless, is perceived to be proper insofar as the Arbitrator in the previous case was not presented with as thorough and comprehensive an articulation of the Union's position therein or the applicable arbitral authorities as that which has been presented by the Union in the instant case. Moreover, the Arbitrator further notes that there are significant distinctions between the fact circumstances involved in the two (2) cited cases and those which are involved in the instant case. In the two cited cases, the subject triggering, complained-of incidents were largely single occurrences of relatively short duration; they appear to involve considerably smaller amounts of money; there was some question whether the disputed work was work which ". . . is normally performed by employees at the particular location when there is appropriate equipment, skills, necessary time and qualified employees to perform such work . .

.” as is prescribed in Article 3.3; and lastly, perhaps more importantly, no loss of bargaining unit jobs appears to have occurred as a result of Management's decision in the cited cases.

In the instant case, however, the amount of work involved is considerable in terms of the scope of duties, number of bargaining unit jobs affected, and the amount of money involved; the disputed transfer is to be a permanent transfer of work to the Hoopeston Plant; there is absolutely no doubt whatsoever that the St. Louis bargaining unit employees are capable of performing the work in accordance with the provisions of Article 3.3; and despite the uncertainty in the record as to the exact number of St. Louis bargaining unit employees who were negatively impacted by Management's decision herein, it is conceded by [ANC] that a significant number of bargaining unit jobs were lost at the St. Louis Plant as a result of that decision, and that said loss of jobs had a resultant, negative impact on the bargaining unit and the Union itself.

Id. at 21-22. In light of these "critical factual differences" between the present case and the two prior cases, the arbitrator concluded, no "reasonable or proper comparison can be made" to support a finding in ANC's favor. Id. at 22. The arbitrator then went on to determine, based on the facts of the present case, that ANC had violated Article 3.3 of the CBA when it transferred the coffee can end and sanitary can end work from the St. Louis plant to the Hoopeston plant. Id. at 24. In fashioning a remedy, the arbitrator directed ANC to transfer the work and equipment back to the St. Louis plant and make whole all current and former bargaining unit employees who had been adversely affected by ANC's violation. Id. at 24-25.

ANC filed the present civil action in federal district court seeking to vacate the arbitrator's award, and defendants filed a counterclaim seeking to enforce the award. The district court thereafter granted a motion for summary judgment filed by defendants, denied ANC's cross-motion for summary judgment, and ordered

enforcement of the arbitrator's award on grounds that the arbitrator was not bound under principles of res judicata to follow the two prior arbitration decisions cited by ANC and that the arbitrator's decision draws its essence from the CBA. Slip op. at 5-6. ANC appealed.

## II. Discussion

In a series of 1960 decisions known as the "Steelworkers Trilogy," the Supreme Court recognized the general rule that -- when parties to a collective bargaining agreement bargain for arbitration as a method of resolving disputes arising under the agreement, and a dispute is then properly submitted to arbitration -- the arbitrator's interpretation of the collective bargaining agreement must be afforded extreme judicial deference. "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." United Steelworkers v. American Mfg. Co., 363 U.S. 564, 567-68 (1960). In such circumstances, the Court explained, "[w]hether the moving party is right or wrong is a question of contract interpretation for the arbitrator . . . [and] the moving party should not be deprived of the arbitrator's judgment, when it was his [or her] judgment and all that it connotes that was bargained for." Id. at 568. In United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960), the Court explained "[t]he labor arbitrator is usually chosen because of the parties' confidence in his [or her] knowledge of the common law of the shop and their trust in his [or her] personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment." In comparison, the Court observed, "[t]he ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he [or she] cannot be similarly informed." Id. In United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596 (1960), the Court admonished "[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining

agreements."  Thus, the Supreme Court concluded, a court must enforce an arbitrator's award so long as the award draws its essence from the collective bargaining agreement, notwithstanding the court's possible disagreement with the arbitrator's interpretation. Id. at 597-99.  More recently, the Supreme Court reiterated these principles and noted that, absent fraud, the arbitrator's dishonesty, or other considerations of that nature, an arbitrator's award must be enforced "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his [or her] authority[;] that a court is convinced [the arbitrator] committed serious error does not suffice to overturn his [or her] decision."  United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987).  Finally, these principles are to be followed "even when the basis for the arbitrator's decision may be ambiguous."  W. R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers, 461 U.S. 757, 764 (1983) (W. R. Grace & Co.).

In United Elec., Radio & Mach. Workers, Local 1139  v. Litton Microwave Cooking Prods., 728 F.2d 970, 972 (8th Cir. 1984) (en banc), this court similarly observed "[i]t is not for us to decide whether we would have awarded this particular relief, or whether the arbitrator correctly interpreted the contract.  Those questions are, in all but the clearest cases, the arbitrator's business, not ours."  Upon noting that the arbitrator had not clearly exceeded his authority or violated the collective bargaining agreement in that case, this court held that the union was entitled to full enforcement of the arbitration award.  Id.  "It was, after all, the arbitrator's judgment and interpretation for which the parties bargained when they agreed that disputes arising under the contract would be submitted to arbitration."  Id.  In Kewanee Mach. Div. v. Local 21, Int'l Bhd. of Teamsters, 593 F.2d 314, 316 (8th Cir. 1979), this court noted the principles set forth in the "Steelworkers Trilogy" and further highlighted the well-established rule that "[t]he grant of power by the agreement must be broadly construed, with any doubt resolved in favor of the arbitrator's authority."  Id. (citing cases); Walsh v. Union Pac. R.R. Co., 803 F.2d 412, 414 (8th Cir. 1986) (same), cert. denied, 482 U.S. 928 (1987).  Thus, this court has consistently echoed the Supreme Court's

teachings that, while an arbitrator may not dispense his or her own brand of industrial justice, the arbitrator may look for guidance from many sources, and the resulting arbitration award is entitled to extreme judicial deference so long as it was not obtained by unlawful or improper means and it draws its essence from the collective bargaining agreement. We now turn to the case at bar.

To begin, we note that the arbitrator carefully considered ANC's argument that the contracting out issue was controlled by two previously issued arbitration awards -- one issued by Arbitrator Cole in 1980 and the other by Arbitrator Mikrut himself in 1993. The arbitrator decided that those two prior arbitration awards were based upon materially distinguishable facts and not dispositive under applicable principles of res judicata. Mikrut 1994 Decision at 22. The arbitrator noted that, in the two prior cases, the transfers of work were single occurrences of relatively short duration, the transfers involved considerably smaller amounts of money, there was some question regarding the capability of the bargaining unit employees to perform the subject work within the terms of Article 3.3, and it appeared that no bargaining unit jobs were lost as a result of the transfers. Id. at 21. By contrast, in the present case, he noted, the transfer of work affected a significant number of bargaining unit employees and a substantial amount of money, the transfer was permanent, the St. Louis bargaining unit employees were unquestionably capable of performing the work within the terms of Article 3.3, and some bargaining unit jobs were lost as a result of the transfer. Id. at 21-22. Interpreting the CBA as it applied to the facts of the present case, the arbitrator then concluded that ANC's transfer of the coffee can end and sanitary can end work and equipment from the St. Louis plant to the Hoopeston plant violated Article 3.3.

Recognizing that the scope of our review is very limited, we hold that the award of the arbitrator is rationally based upon, and draws its essence from, the CBA. The arbitrator turned primarily to the language of Article 3.3, which states that "[t]he company will not contract out work which is normally performed by employees at the particular location when there is appropriate equipment, skills, necessary time and

qualified employees to perform such work." The arbitrator interpreted this prohibition to cover the transfer of the coffee can end and sanitary can end work outside the bargaining unit, but within the corporation. His interpretation of the CBA was not unreasonable in light of the absence of any express definition in the CBA of "contract out." The arbitrator also took into consideration numerous prior arbitration awards and practices in the industry. Of critical importance were his findings that

> [i]n the instant case . . . the amount of work involved is considerable in terms of the scope of the duties, number of bargaining unit jobs affected, and the amount of money involved; the disputed transfer is to be a permanent transfer of work to the Hoopeston Plant; there is absolutely no doubt whatsoever that the St. Louis bargaining unit employees are capable of performing the work in accordance with the provisions of Article 3.3; and . . . it is conceded by [ANC] that a significant number of bargaining unit jobs were lost at the St. Louis plant as a result of that decision.

Mikrut 1994 Decision at 21-22. These critical facts adequately distinguish this case from the prior awards upon which ANC relies and also support the arbitrator's interpretation and application of the CBA.

Moreover, the arbitrator's finding that a violation of Article 3.3 had occurred under the present facts is well within the mainstream of arbitral decisions which have held that an intra-corporate, extra-unit work transfer may constitute prohibited contracting out where, as here, the purpose of the contracting out clause is the preservation of bargaining unit work. See, e.g., National Steel Corp., Granite City Div. v. United Steelworkers, Local 16, Gr. No. 310-87-10 (June 27, 1991) (McDermott, Arb.) (rejecting the employer's argument that contracting out requires "a 'contract,' a 'contractor,' and an 'out' . . ." and holding that the employer's transfer of ladle-banding work from a steelworkers' unit to a brick layers' unit within the same plant violated the contracting out provision); White Motor Co. v. International Bhd. of Teamhousemen,

Local 710, 43 Lab. Arb. 682, 684 (1964) (McGury, Arb.) (holding that transfer of clerical and accounting work from one branch to another branch of the same company violated the contracting out provision of the collective bargaining agreement; "[t]he essence of the Union bargain in obtaining the no-contracting out clause is to keep the contracted work within the bargaining unit[;] the question of where it ends up is normally of no concern").

Finally, we disagree with ANC's argument that, under Trailways Lines, Inc. v. Trailways, Inc. Joint Council, 807 F.2d 1416 (8ᵗʰ Cir. 1986) (Trailways), and Wilbur Chocolate Co. v. Bakery, Confectionary and Tobacco Workers' Int'l Union, Local 464, No. CIV. A. 86-5479, 1988 WL 33881 (E.D. Pa. Mar. 31, 1988) (Wilbur Chocolate), aff'd without opinion, 862 F.2d 312 (3d Cir. 1988), we should reverse the district court's decision to enforce the arbitrator's award. We have examined both of those decisions and conclude that neither supports ANC's contention that the district court erred in the present case. It is true that, in Trailways, 807 F.2d at 1425-26, this court affirmed the district court's summary judgment decision to vacate the arbitrator's award, where that award conflicted with a prior arbitrator's award involving the same union, the same company, the same issue, and the same clause of a collective bargaining agreement. In that case, however, this court specifically found that the arbitrator's award at issue did not draw its essence from the collective bargaining agreement but, rather, represented the arbitrator's "personal notions of what was proper." Id. at 1426. Moreover, unlike in the present case, the arbitrator in Trailways did not seriously consider the potential preclusive effect of the prior award, despite the apparent identity of material facts. Id. at 1425 ("[the arbitrator] did not discuss the similar nature of the two grievances and why, in light of this fact, the [prior award] was not to be given preclusive effect"; "[i]f an arbitrator does not accord any precedential effect to a prior award in a case like this, or at least explain the reasons for refusing to do so, it is questionable when, if ever, a 'final and binding' determination will evolve from the arbitration process"). Finally, we note that the Trailways court specifically explained "[a]lthough an arbitrator generally has the power to determine whether a

prior award is to be given preclusive effect . . . courts have also recognized that the doctrine of res judicata may apply to arbitrations *with strict factual identities*." Id. (emphasis added). The court then went on to recognize that there may be some situations where an arbitrator will properly refuse to defer to a prior award involving the same issue. Id. at 1425 & n.16 (discussing instances where such a refusal may be justified). Likewise, in Wilbur Chocolate, 1988 WL 33881, at *5, the district court granted summary judgment for the plaintiff-company and vacated the arbitrator's award because the arbitrator's award did not draw its essence from the collective bargaining agreement -- not solely because the arbitrator failed to follow a prior award involving the same union, the same company, the same collective bargaining agreement, and the same issue. Moreover, in Wilbur Chocolate, the arbitrator had expressly stated that he disagreed on the merits with the prior arbitration decision and, thus, made no effort to distinguish the prior case from the case before him, even though it was apparently identical in its material facts. Id. at *4-5. Consistent with defendants' position in the present case, the district court in Wilbur Chocolate also noted that there are situations where an arbitrator may refuse to defer to a prior award involving the same issue, even where the CBA states that arbitration awards should be final and binding. Id. at *4. Finally, the district court in Wilbur Chocolate noted that whether a prior arbitrator's award should be given binding effect under the agreement is a matter of contract interpretation for the arbitrator. Id.

Here, in stark contrast to the underlying arbitrators' decisions in Trailways and Wilbur Chocolate, Arbitrator Mikrut specifically identified the critical factual differences between the arbitral decisions cited by ANC and the case before him and, based upon those material distinctions, determined that no preclusive effect should be accorded the two prior decisions. Thus, the present case is analogous to several federal court decisions which have required the enforcement of an arbitrator's award even though the arbitrator declined to accord preclusive effect to a prior arbitrator's award involving the same contract language and a similar issue. See W. R. Grace & Co., 461 U.S. at 765; Hotel Ass'n of Washington, D.C., Inc. v. Hotel & Restaurant

Employees Union, Local 25, 963 F.2d 388 (D.C. Cir. 1992) (Hotel Association); McGraw Edison, Wagner Div. v. Local 1104, Int'l Union of Elec., Radio & Mach. Workers, 767 F.2d 485 (8th Cir. 1985) (McGraw Edison); Westinghouse Elevators of Puerto Rico, Inc. v. S.I.U. de Puerto Rico, 583 F.2d 1184 (lst Cir. 1978) (Westinghouse Elevators). In Westinghouse Elevators, a dispute arose concerning a contract provision entitling employees to an allowance for expenses incurred while working outside the city of San Juan, Puerto Rico. One arbitrator held that the provision precluded any payment unless the employee actually incurred lodging or meal expenses while working outside of the city; six years later, a second arbitrator held that the same provision entitled employees to the allowance regardless of whether expenses were actually incurred while working outside of the city. 583 F.2d at 1185-86. The district court dismissed the employer's action to vacate the second award, and the First Circuit affirmed, stating:

> Unless the Parties agree otherwise in their contract, an arbitrator's award rendered in a prior arbitration proceeding--even between the same parties--does not stop either party from raising the same issue in a subsequent arbitration; nor does it bar the arbitrator from determining the same or a similar issue anew. The arbitrator may consider prior awards between the same parties or between other parties if offered in the proceeding before him [or her], but he [or she] is not bound to follow them.

Id. at 1187 (quoting Federal Bearings Co. v. United Auto., Aircraft & Agric. Implement Workers, Local 297, 22 Lab. Arb. 721, 726 (1954) (Justin, Arb.)). Similarly, Hotel Association involved premium pay to part-time workers, and the first arbitrator denied the premium pay but the second arbitrator, construing the same clause in the collective bargaining agreement, granted the premium pay under similar factual circumstances. 963 F.2d at 388-89. The D.C. Circuit, in upholding the second award, stated "the question whether a prior arbitral decision binds a subsequent arbitrator can be determined only by reference to the agreement itself. It falls to the second arbitrator,

therefore, to answer that question in the first instance." Id. at 391. In a case from our own circuit, McGraw Edison, this court reversed the district court's decision to vacate the arbitrator's award because the district court based its finding that the award did not draw its essence from the collective bargaining agreement on an improper basis. 767 F.2d at 488 ("the Company does not cite and our independent research fails to reveal any decisions of this Court or of the Supreme Court vacating an arbitration award on the ground that the arbitrator grossly erred in construing the collective bargaining agreement"). In rejecting the employer's alternative argument that the district court order should be affirmed because the arbitrator failed to follow an earlier arbitrator's award, this court quoted the Second Circuit as follows:

> Courts reviewing [inconsistent] arbitration awards have generally concluded that arbitrators are not bound by the rationale of earlier decisions . . . that inconsistency with another award is not enough in itself to justify vacating an award . . . [and] that neither award will be set aside where both draw their essence from the collective bargaining agreement.

Id. at 489 (quoting Connecticut Light & Power Co. v. Local 420, IBEW, 718 F.2d 14, 20 (2d Cir. 1983)).

Applying the above-quoted statements of law to the present case, we conclude that, although there may appear to be some inconsistency between the arbitrator's decision and the two prior arbitral decisions cited by ANC, the arbitrator's award in the present case nevertheless draws its essence from the CBA and is thus entitled to judicial deference.

III. Conclusion

-13-

In sum, we agree with the district court's rejection of ANC's <u>res judicata</u> argument and also agree with the district court's conclusion that the arbitrator's award draws its essence from the collective bargaining agreement. Accordingly, the judgment of the district court is affirmed, and the arbitrator's award shall be enforced.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.