In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3177

Matt Lindland,

Plaintiff-Appellant,

v.

United States of America Wrestling
Association, Inc., and United States
Olympic Committee,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 5151--Suzanne B. Conlon, Judge.

Submitted August 24, 2000--Decided August 24, 2000

   Before Easterbrook, Manion, and Diane P. Wood, Circuit
Judges.

   Easterbrook, Circuit Judge.  During the Olympic
trials for Greco-Roman Wrestling, conducted by
United States of America Wrestling Association
(USA Wrestling) as the governing body of that
sport, Keith Sieracki was declared the winner,
over Matt Lindland, in the 76 kilogram
championship bout (known as "Bout #244" on the
program). As the winner, Sieracki was entitled
under the rules of the contest to be nominated by
USA Wrestling to the United States Olympic
Committee (USOC) as a member of the U.S. team in
that sport. Sieracki has been duly nominated.

   Lindland protested the officials' decision, and
after internal proceedings unnecessary to recount
USA Wrestling rejected his protest. Lindland then
initiated arbitration, which was his right under
sec.9 of the Ted Stevens Olympic and Amateur
Sports Act, 36 U.S.C. sec.sec. 220521-29. "A
party aggrieved by a determination of the
corporation under section 220527 or 220528 of
this title [here, USA Wrestling's final decision]
may obtain review by any regional office of the
American Arbitration Association." 36 U.S.C.
sec.220529(a). On August 9 arbitrator Daniel T.
Burns directed USA Wrestling to rerun the final
bout. The award's critical language provides:

"Bout #244 of the June 24, 2000 Olympic Trials will be re-wrestled in accord with the USA Wrestling rules and officiating in effect at that time. The re-wrestle shall take place prior to Noon on Monday, August 14, 2000." Sieracki and Lindland accordingly wrestled again. This time Lindland was the victor by a unanimous decision. But USA Wrestling did not replace Sieracki with Lindland as its nominee for the Olympic team; instead it left Sieracki as the nominee and put Lindland on an eligibility list, from which he might replace Sieracki in the event of injury. Lindland then filed this action to enforce the award. Federal jurisdiction is proper. The parties debate whether federal-question jurisdiction is appropriate, a debate we bypass because complete diversity of citizenship exists, and the value of a position on the Olympic team cannot be said (to a legal certainty, see St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)) to be less than $75,000. The Northern District of Illinois is a proper venue, because the arbitration took place in Chicago. 9 U.S.C. sec.9. The same section of the Federal Arbitration Act provides a private right of action, authorizing (and requiring) judges to confirm awards on the demand of the prevailing party unless the award is infirm.

The district court dismissed the suit without rendering a written opinion. Its judgment says only that the petition to confirm the award is "dismissed"; a minute order adds that the petition "is dismissed as moot for reasons stated in open court. Court finds there is no federal jurisdiction at this time." Even as supplemented by the district court's orally stated view that all Lindland received from the arbitrator was a right to a rematch rather than a right to be named to the squad if he won, this decision is off the mark. Lindland thinks that the award entitles him to the spot on the Olympic team. That may be right or wrong, but either way the claim is not "moot" as long as it is possible for USA Wrestling to designate him as its nominee for the team (a possibility that is open until midnight Eastern time today). Moreover, federal jurisdiction plainly is present, as we have recounted.

So does the award entitle Lindland to USA Wrestling's nomination for the Olympic spot? Here is its critical language a second time: "Bout #244 of the June 24, 2000 Olympic Trials will be re-wrestled in accord with the USA Wrestling rules and officiating in effect at that time." The new bout occurred, and Lindland was declared its winner. The award plus the victory entitle Lindland to the Olympic spot. The arbitrator did not order an exhibition match between Sieracki

and Lindland; he ordered that "Bout #244 . . . be re-wrestled". Bout #244 is the championship match, and USA Wrestling's rules say that its winner receives its support in going to the Olympic Games in Sydney as the U.S representative. Lindland, as the winner of Bout #244, is entitled to nomination under the association's own rules--to which Arbitrator Burns pointedly referred. Rule 3.2.1 of USA Wrestling's "2000 Olympic Trial Procedures" doesn't say that USA Wrestling will nominate the winner of the championship bout if it is in the mood to do so; the rule says that the "winner will be the USAW designate for the 2000 Olympic Team" (with an exception not pertinent here) (emphasis added). Reading the award together with the rules to which it refers, then, we do not have an ambiguous award, one that might be sent back to the arbitrator for clarification (if there were time, which there is not). In context, the Burns Award unambiguously makes the rematch dispositive; it replaces the outcome of the match held on June 24, with whatever consequence of victory "the USA Wrestling rules and officiating in effect at that time" provide. That consequence, under Rule 3.2.1, is USA Wrestling's nomination for membership on the Olympic squad.

   An award may be set aside on grounds specified in 9 U.S.C. sec.10(a), but the district judge did not conclude that any of these defects (such as "corruption" or "fraud" or "evident partiality") spoils the Burns Award. Nor does anyone contend that the dispute was not arbitrable, or that the arbitrator exceeded the authority conferred by sec.220529. USA Wrestling proclaims in the memorandum filed in this court "that there are numerous grounds for vacating the Award" but does not identify even one of these "numerous grounds" under sec.10; the memorandum devotes almost all of its space to arguing that federal-question jurisdiction is lacking. It would be surprising if disputes about application of the Ted Stevens Olympic and Amateur Sports Act were confined to state court, see Michaels v. United States Olympic Committee, 741 F.2d 155 (7th Cir. 1984) (discussing jurisdictional issues before the 1998 amendment that gave sec.220529 its current contents) but, as we have said, diversity of citizenship enables us to bypass that subject.

   Both USA Wrestling and the USOC view the award as problematic because Sieracki was not a party to the arbitration. Section 10 of the Arbitration Act does not provide that the absence of an interested person privileges a person who did participate to disregard an adverse decision. What is more, sec.220529 calls for arbitration between the aggrieved athlete and the governing body; it does not require arbitration among

athletes. Likewise under the USOC Constitution, Art. IX sec.2, the demand for arbitration must name "such USOC member" as the adverse party. Lindland named the right party in his demand to arbitrate. He sought relief from USA Wrestling, which is the USOC member and the governing body of his sport, not from Sieracki. USA Wrestling is the only entity in a position to give him what he wants--nomination to the Olympic team. Similarly, an employee who has been discharged from his position may arbitrate a grievance with his employer, without naming as an additional party his replacement, who might have to be discharged or demoted to reinstate a grievant who prevails in the arbitration. The notion, advanced by both USA Wrestling and the USOC, that an arbitration must include all persons who could be affected by the outcome is novel and would work a revolution in arbitral proceedings. Neither USA Wrestling nor the USOC has cited any authority for the proposition that a person potentially affected by an arbitration is a necessary party to it. Perhaps Sieracki could have intervened, or perhaps USA Wrestling could have brought him in, but these possibilities are neither here nor there. Sieracki, as a non-party to the arbitration, is not "bound" by the result, but USA Wrestling is, and it must implement the award. This means, in particular, treating the winner of the second bout as "the winner" for Olympic purposes.

Sieracki has initiated his own arbitration, protesting the result of the rematch (and perhaps protesting USA Wrestling's willingness to implement at least this part of the Burns Award). This arbitration includes both wrestlers, plus the USOC, and thus is more comprehensive than the proceeding conducted before Arbitrator Burns. It also creates a possibility that USA Wrestling will be subject to inconsistent awards, or that it will have to go back to the arbitrator hearing the second proceeding with Lindland rather than Sieracki as its nominee. Arbitrators need not follow judicial notions of issue and claim preclusion, Brotherhood of Maintenance of Way Employees v. Burlington Northern R.R., 24 F.3d 937 (7th Cir. 1994), which increases the chance of inconsistent awards. These are risks that USA Wrestling took when it decided not to bring Sieracki into the original proceeding, and this risk does not justify USA Wrestling's incomplete implementation of the Burns Award. A party to arbitration cannot refuse to implement an existing award just because it dreads the prospect of a later incompatible award; indeed, even when incompatible awards are rendered the party may be required to implement both. See W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757 (1983); Consolidation Coal Co. v. United Mine

Workers, 213 F.3d 404 (7th Cir. 2000). The only questions at hand now are (a) what does the Burns Award require?, and (b) are there legal grounds for not enforcing it? We hold that (a) the award requires USA Wrestling to certify to the USOC that the winner of the rematch (which is to say, Lindland) is the category champion and thus its nominee for the Olympic Games, and (b) none of the grounds in the Arbitration Act justifies failing to enforce that award.

The USOC's argument that Lindland has failed to "exhaust his remedies" because he is participating in the arbitration initiated by Sieracki is frivolous. It amounts to saying that nonparties to an arbitration may nullify an award by demanding sequential arbitration. Section 9 of the Arbitration Act expressly gives Lindland the right to judicial enforcement of an award. With respect to the Burns Award, there are no more procedures to exhaust. Moreover, the suggestion of the USOC (at page 17 of its memorandum in this court) that Lindland has demonstrated unfitness for the team by initiating litigation, rather than by accepting the results of USA Wrestling's internal processes, demeans that august organization. Congress gave athletes not only a right to arbitration but also a right to judicial enforcement of ensuing awards. To propose that competitors forfeit their rights as athletes when they use legal entitlements under the Ted Stevens Olympic and Amateur Sports Act and the Federal Arbitration Act is to confess antipathy to one's legal obligations--a step that makes judicial enforcement of the award all the more vital.

Lindland has named the USOC as an additional defendant. But the USOC was not a party to the Chicago arbitration. The only appropriate disposition "enforcing" the award is a judgment requiring USA Wrestling to send Lindland's name to the USOC as its champion and nominee. Lindland is entitled to that relief immediately. The mandate will issue now. We trust that the USOC will act responsibly once it receives USA Wrestling's nomination of Lindland.