In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-3668

UNITE HERE LOCAL 1,

*Plaintiff-Appellee,*

*v.*

HYATT CORPORATION, doing business
as Hyatt Regency Chicago,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-04507 — **Robert W. Gettleman**, *Judge.*

ARGUED APRIL 4, 2017 — DECIDED JULY 6, 2017

Before WOOD, *Chief Judge*, and KANNE and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge.* Defendant Hyatt Corporation, doing business as Hyatt Regency Chicago ("Hyatt" or the "hotel"), appeals the district court's entry of judgment on the pleadings in favor of plaintiff Unite Here Local 1 ("Local 1"), confirming

the decisions of two arbitrators in Local 1's favor. *Unite Here, Local 1 v. Hyatt Corp.*, 2015 WL 7077329 (N.D. Ill. Nov. 13, 2015). Hyatt contends that the matter is either moot or does not present an appropriate case for confirmation of the awards, and that the district court's decision to confirm the awards needlessly interjects the court into an ongoing set of disputes between itself and Local 1 that should be resolved by way of further arbitration. We disagree and affirm the judgment. The district court's modest action in confirming the awards places the court's contempt power behind the prospective relief ordered by the arbitrators, while reserving the merits of any pending or future grievances for arbitration. Indeed, Local 1 has conceded that any contempt petition would be based solely on the outcome of arbitrations post-dating the district court's confirmation order. Consequently, we are not convinced that the court's decision to confirm the two awards in any way undermines the parties' agreement to resolve their disputes through arbitration. We therefore affirm the district court's decision.

## I.

The Hyatt Regency Chicago is a convention hotel with over 2,000 guest rooms, five ballrooms, and between 80 and 100 meeting and event rooms. It employs approximately 1,200 people, 850 of whom are hourly employees belonging to the union. Local 1 represents the members of the bargaining unit, who include door and bell attendants; switchboard operators; room, house, and public area housekeeping attendants; linen throwers and attendants; food and beverage hostesses, servers, bussers, cooks, bartenders, and cafeteria attendants; convention housemen; and various other workers. The size of the

hotel's facilities and workforce enable it to host up to 10,000 guests at a time and thus to handle some of the city's largest professional conclaves and other gatherings.

Hyatt and Local 1 are parties to a longstanding collective bargaining agreement, the current version of which is effective from September 1, 2013 through August 31, 2018 (the "CBA" or "agreement"). Section 56 of that agreement prohibits the hotel's 140 managerial employees from performing work normally performed by bargaining-unit employees absent an emergency. R.1-1 at 48.[1] Section 46 of the CBA sets forth a multi-step grievance procedure for the resolution of disputes between the parties, and section 45 provides for the arbitration of any disputes over the interpretation or alleged violations of any terms of the agreement not resolved by the grievance procedure. In the second half of 2013 and the first part of 2014, there were a number of incidents in which managers performed bargaining-unit work in circumstances that Local 1 did not regard as emergencies. The union took two sets of grievances on that subject to arbitration in the Fall of 2014, both of which resulted in awards in Local 1's favor.

In an award dated February 2, 2015, arbitrator George R. Fleischli found that Hyatt had violated section 56 by permitting managers to perform work normally done by housemen in the convention services department of the hotel. Housemen perform the tasks necessary to set up meeting rooms and ball rooms for the particular types of events scheduled for those

---

[1]  Section 56 states in full: "Supervisory personnel shall not perform work normally performed by bargaining-unit employees except in cases of emergency." R. 1-1 at 48.

rooms: they bring the appropriate types of tables into the rooms, arrange chairs around them, place linens on the tables if necessary, establish water and refreshment stations, and set up any podiums, stages, or dance floors that might be required. When an event has concluded, they then break down the room and set it up for the next event. Local 1 alleged that on some 17 occasions from September 2013 through June 2014, supervisors took on tasks that they should have left to housemen, including: setting up tables, replacing tables that had already been set up, straightening or adjusting chairs, placing drinking glasses on tables, setting up or moving special "highboy" cocktail tables, breaking down tables, stacking chairs, cleaning up trash, and so forth.

As a threshold matter, arbitrator Fleischli rejected the hotel's dual contentions that there was an established practice of "shared work" between housemen and supervisors that envisioned them both working side by side as necessary to set up and break down event rooms and, relatedly, that the individuals supervising housemen were "working supervisors" whose job responsibilities included pitching in as necessary to complete tasks. The evidence, in the arbitrator's view, simply did not support the existence of a consistent practice in either respect. (In the concluding section of his decision, he did allow that there had been lax enforcement of section 56 in the convention services department of the hotel for many years which had effectively permitted supervisors in that department to violate the rule unchecked.)

On examining the terms of section 56, arbitrator Fleischli concluded that it was not self-evident what constituted an "emergency" that would permit supervisors to step in and

perform tasks that were otherwise assigned to housemen. He rejected Hyatt's contention that the term should be defined simply as a set of unforeseen circumstances. Having weighed the parties' competing arguments on this point, Fleischli concluded that an "emergency" was properly defined as unforeseen circumstances that require immediate action, including in particular the need for the hands-on intervention of supervisors when bargaining-unit members are not reasonably available to take care of the urgent task at hand.

Ultimately, arbitrator Fleischli found that the union's grievances were arbitrable (*i.e.*, properly preserved and presented for decision) as to five of the incidents cited, and he concluded that Hyatt had violated section 56 in three of those incidents. The proven violations were relatively minor, in his view, but at least in the first two of the incidents, they were not de minimis. Fleischli declined to order make-whole relief in the form of backpay given the history of lax enforcement of section 56 in the department, but he did order Hyatt to cease and desist from further violations of section 56 and to take such steps as were necessary to ensure that hotel managers complied with the provision in the future.

In a second award dated March 1, 2015, arbitrator Ann S. Kenis likewise found that Hyatt had violated section 56 on multiple occasions. Arbitrator Kenis addressed a broader range of circumstances than had her colleague. She was presented with two grievances. The first involved supervisors doing work normally performed by bell attendants (also know as bellmen), including the receipt and storage of guest luggage, retrieving checked bags for guests, and loading luggage into guest vehicles. These incidents occurred in the Fall of 2013. The

second, more general grievance involved bargaining-unit employees from multiple hotel departments and was based on supervisors performing any number of tasks (beginning on or about March 13, 2014 and continuing thereafter), including: cleaning (*e.g.*, mopping or sweeping floors, using mechanical ride-on "chariots" to clean ballroom or public area carpets, cleaning the front doors of the hotel, and emptying trash cans in public areas); serving guests in the hotel restaurants, café, and employee cafeteria (*e.g.*, seating guests, pouring drinks, making coffee, bussing tables, stocking the buffet, handing out condiments, working the cash register, wiping counters); transporting food, beverages, and dishes to and from ballroom banquets; loading soiled linens into the hotel laundry chute; and helping to clear rooms after events (*e.g.*, picking up trash, removing special items like ice sculptures, and so on).

Upon review of the evidence and the parties' arguments as to the proper construction of section 56, arbitrator Kenis agreed with arbitrator Fleischli as to certain key points. First, she found insufficient evidence to support Hyatt's contention as to a practice of shared work responsibilities between bargaining-unit employees and their supervisors or as to a practice of "working supervisors" who routinely pitched in to help the line employees they supervised. Second, she agreed with her colleague that the term "emergency" connotes more than just unforeseen circumstances, as Hyatt had suggested. Kenis noted that in the arbitration context, another arbitrator's interpretation of "emergency" was neither conclusive nor binding upon her. Yet, she believed that she should not disregard arbitrator Fleischli's reasoning absent substantially altered circumstances, which Hyatt had not established. In that regard, arbitrator

Kenis noted that although Hyatt had attempted to convince her that there was a longstanding, uniform practice of managers doing bargaining-unit work whenever unforeseen circumstances presented themselves, she regarded the hotel's proof on that point as being even weaker than the evidence presented to arbitrator Fleischli. Arbitrator Kenis therefore adopted her colleague's definition of emergency.

Turning to the evidence presented to her, arbitrator Kenis found that there were only a few genuine emergencies involving unforeseen circumstances coupled with a need for immediate action: One involved a pipe leaking water into a ballroom; the second involved a large professional conference and a shortage of staff members to handle all tasks despite management's efforts to summon additional workers; and the third involved scraping gum from pavement at the entrance to the hotel immediately prior to a VIP's arrival. Beyond those incidents, Hyatt had either failed to establish that there was a genuine emergency requiring immediate action as it claimed, or the facts showed that supervisors were simply pitching in to perform mundane, bargaining-unit tasks as a matter of course (in some instances, for hours at a time) without first ascertaining whether there was a bargaining-unit employee available to handle the task in question.

Arbitrator Kenis thus concluded that Hyatt had transgressed section 56 in all but the isolated instances in which she found there had been a true emergency. She rejected the hotel's suggestion that the violations were de minimis, reasoning that even if that characterization applied to certain individual incidents, "there is a cumulative pattern shown on this record that requires a remedy." R. 1-3 at 50. In this respect, she viewed

the evidentiary record as being significantly different from the one presented to arbitrator Fleischli. Arbitrator Kenis therefore concluded that make-whole relief in the form of backpay (at an overtime rate) was appropriate to compensate the union for the time supervisors had spent performing bargaining-unit tasks. Like arbitrator Fleischli, she also ordered Hyatt to cease and desist from future violations of section 56.

Hyatt allowed 90 days to pass without filing a petition to vacate either of the awards in federal court;[2] the union, however, pursuant to section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), filed a petition in the district court to confirm the two awards. In its complaint, the union alleged that Hyatt "has failed and refused and continues to fail and refuse to comply with or otherwise be bound by" the Fleischli and Kenis awards. R. 1 at 3 ¶¶ 16, 18. In support of that contention, Local 1 cited some 41 examples of managers allegedly performing bargaining-unit work in February through May of 2015, after the two arbitrators had ordered Hyatt to cease and desist from further violations of section 56. R. 1 at 3–7 ¶ 19. (These incidents constitute the same alleged 41 violations of section 56 pending between the parties,

---

[2] The limitations period for filing a motion to vacate an arbitration award is borrowed from state law, and the Illinois Uniform Arbitration Act specifies a period of 90 days for such a request. 710 Ill. Comp. Stat. 5/12(b); *see, e.g., Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311–12 (7th Cir. 1987). An action to confirm an arbitration award, on the other hand, is subject to a much more generous limitations period of five years in Illinois. *See* 735 Ill. Comp. Stat. 5/13-205; *Peregrine Fin. Grp., Inc. v. Futronix Trading Ltd.*, 929 N.E.2d 1226, 1227–28 (Ill. App. Ct. 2010).

and working their way through the contractual grievance and arbitration procedure, that we refer to elsewhere in this opinion.)

The parties filed cross-motions for judgment on the pleadings, and Judge Gettleman ultimately granted judgment on the pleadings in favor of Local 1.[3] Among other things, he noted that Hyatt had not timely challenged the awards, rendering them final and beyond review. 2015 WL 7077329, at *2 n.1. In any case, he reasoned, the awards drew their essence from the CBA and were therefore valid. *Id.*, at *2. He rejected Hyatt's contention that confirmation of the awards was foreclosed by this court's decisions in *United Elec. Radio & Mach. Workers of Am. v. Honeywell, Inc.*, 522 F.2d 1221, 1225-27 (7th Cir. 1975), and *Local 1545, United Mine Workers of Am. v. Inland Steel Coal Co.*, 876 F.2d 1288, 1294-97 (7th Cir. 1989). He pointed out that the unions in those cases were attempting to bypass the arbitration process and give prospective effect to arbitration awards that contained only backward-looking, make-whole remedies. This court held that a union could do this only if it met certain criteria. The arbitration awards in this case, by contrast, expressly granted prospective relief in the form of cease-and-desist orders. "Nothing in *Honeywell* or *Inland Steel* suggests that an arbitration award granting

---

[3]   Hyatt's motion alternatively asked the court to compel arbitration of the new disputes regarding section 56, a request that the district court denied. In the course of briefing the motions for judgment on the pleadings, Hyatt also asked the court to convert Local 1's motion into one for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). The court likewise denied that request, finding it unnecessary to resort to matters outside of the pleadings in order to resolve the motion.

prospective relief cannot be confirmed," Judge Gettleman reasoned. "Indeed, they both suggest just the opposite." 2015 WL 7077329, at *3 (N.D. Ill. Nov. 13, 2015).

Hyatt filed a motion to stay the district court's judgment pending appeal. Hyatt raised two principal concerns about the court's order of confirmation. First, to the extent the order was viewed as an injunction (in that it confirmed the cease and desist commands entered by the arbitrators), the order gave Hyatt no notice of the duties imposed on it—*i.e.*, no description of the particular acts from which Hyatt was obligated to refrain. Essentially, the court, like the arbitrators, had merely told Hyatt, "Do not violate the contract." Hyatt was concerned that the lack of specifics placed it at undue risk of contempt sanctions. Second, in Hyatt's view, confirmation of the two awards had given the union the means to bypass the grievance and arbitration procedure set forth in the CBA by enabling the union to seek contempt sanctions for new violations of section 56. Rather than seeking a determination from an arbitrator as to new grievances, the union could simply seek a contempt finding from the district court. Given the nature of the hotel's business—including the variety of events it hosted, guest demands, and the unforeseen circumstances that may occur—Hyatt anticipated that the parties might be in front of the court on a regular basis.

At the hearing on Hyatt's motion, both the district court and the union contradicted the twin premises of the request for a stay. The district court pointed out that it had entered no injunction. It had done no more than confirm the two arbitration awards. To the extent Hyatt believed the cease-and-desist aspects of those awards gave it insufficient guidance as to what

specific acts were prohibited, that would be a matter for the court to consider at a later contempt proceeding. Secondly, the court rejected the notion that confirmation gave the union license to bypass arbitration and bring future grievances directly to court by way of a contempt petition. The union's counsel expressly agreed with the court: Any pending and future grievances would be resolved by way of arbitration, she represented. The union had no immediate plans to file a contempt petition, and any such petition would be based on the outcome of future arbitrations post-dating the confirmation of the Fleischli and Kenis awards. R. 54.

With those points having been clarified, Hyatt withdrew its stay motion without prejudice. It proceeded with this appeal, contending that the court erred in confirming the awards.

## II.

We review the district court's decision to enter judgment on the pleadings in favor of Local 1 de novo. *E.g.*, *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017). Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party, in this case Local 1, is entitled to judgment as a matter of law. *E.g.*, *Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987). In reviewing the judgment, we, like the district court, are confined to the matters presented in the pleadings, and we must consider those pleadings in the light most favorable to Hyatt. *Id.*

Section 301 of the LMRA grants federal courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an indus-

try affecting commerce," § 185(a),[4] and this jurisdiction is understood to include a request to enforce (or vacate) an award entered as a result of the procedure specified in a collective bargaining agreement for the arbitration of grievances. *See United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 595–96, 80 S. Ct. 1358, 1360 (1960); *Evans v. Einhorn,* 855 F.2d 1245, 1253 (7th Cir. 1988) (per curiam).

The Supreme Court has repeatedly recognized the central role that arbitration plays in national labor policy:

> [T]he grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to a collective bargaining agreement.

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581, 80 S. Ct. 1347, 1352 (1960); *see also United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 566–69, 80 S. Ct. 1343, 1346–47 (1960); *Enter. Wheel & Car*, 363 U.S. at 596,

---

[4]   The grant of jurisdiction is not exclusive: state courts have concurrent jurisdiction over section 301 suits. *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S. Ct. 519 (1962).

80 S. Ct. at 1360. More fundamentally, arbitration supplies the parties with a constructive means of resolving their disputes: "It, rather than a strike, is the terminal point of a disagreement." *Warrior & Gulf Navigation*, 363 U.S. at 581, 80 S. Ct. at 1352. When Congress conferred jurisdiction on the federal judiciary over disputes arising under collective bargaining agreements, it meant for us to support and reinforce, rather than displace, the arbitration process:

> Plainly the agreement to arbitrate grievance disputes is the *quid pro quo* for an agreement not to strike. Viewed in this light, [section 301] does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way.

*Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 455, 77 S. Ct. 912, 917 (1957); *see also Am. Mfg. Co.*, 363 U.S. at 569, 80 S. Ct. at 1347 (forbidding courts from independently evaluating merits of grievances under guise of interpreting contractual grievance procedure); *Enter. Wheel & Car*, 363 U.S. at 596, 80 S. Ct. at 1360 ("The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards."). Thus, where appropriate, courts will compel the arbitration of disputes that the parties have contractually committed to arbitration, *e.g.*, *Lincoln Mills*, 353 U.S. at 456–59, 77 S. Ct. at 917–19, and, as relevant here, enforce awards resulting from arbitration as a means of

affording parties complete relief, *see Enter. Wheel & Car*, 363 U.S. at 595–96 & n.1, 80 S. Ct. at 1360 & n.1 (citing *Textile Workers Union of Am. v. Cone Mills Corp.*, 268 F.2d 920 (4th Cir. 1959)); *id.* at 599, 80 S. Ct. at 1362; *Evans*, 855 F.2d at 1253. Confirmation of an arbitration award places the weight of a court's contempt power behind the award, *see, e.g.*, *Chrysler Motors Corp. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 909 F.2d 248, 249–50 (7th Cir. 1990), giving the prevailing party a means of enforcement that an arbitrator would typically lack. *See Lincoln Mills*, 353 U.S. at 455, 456, 77 S. Ct. at 917 (congressional purpose in enacting section 301 "to provide the necessary legal remedies" and "place[ ] sanctions behind agreements to arbitrate grievance disputes").

Against the backdrop of ongoing disputes over supervisors doing bargaining-unit work, Local 1 sought confirmation of the Fleischli and Kenis awards in order to preserve its ability to seek contempt sanctions if Hyatt, contrary to the arbitrators' cease and desist directives, committed additional violations of section 56. As we turn to the merits of that request, a few prefatory remarks are in order.

This case differs from the usual proceeding seeking to confirm or vacate an arbitration award in that it involves awards ordering open-ended prospective relief, as opposed to backward-looking make-whole relief, such as an award of lost wages, *e.g.*, *Dexter Axle Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. 90, Lodge 1315*, 418 F.3d 762 (7th Cir. 2005), or finite forward-looking relief, such as the reinstatement of an employee whom the arbitrator has found to have been wrongfully discharged, *e.g.*, *Chrysler Motors Corp. v. Int'l Union, Allied*

*Indus. Workers of Am., AFL-CIO*, 959 F.2d 685 (7th Cir. 1992). In both of the cases at issue here, the arbitrators ordered Hyatt to cease and desist from further violations of the CBA term they had interpreted and applied. Hyatt equates confirmation of that kind of order with prospective enforcement of an arbitration award in a manner that will disrupt, and potentially supplant, the grievance-and-arbitration procedure that the parties have incorporated into their agreement. When a party asks that an award be enforced prospectively, it is typically asking the court to apply the arbitrator's holding to a later dispute that has not been submitted to arbitration. Often the specific relief requested is the entry of declaratory or injunctive relief that dictates the resolution of the new dispute in harmony with the arbitrator's prior ruling. *E.g., Honeywell, supra*, 522 F.2d at 1224–25. That type of relief places the court in the position of regulating the parties' conduct directly in lieu of having a second arbitrator resolve the merits of the later dispute. The prospective enforcement of arbitration awards is thus a matter that we approach with great caution, as evidenced by our decisions in *Honeywell* and *Inland Steel Coal*. *See Honeywell*, 522 F.2d at 1225 (noting extraordinary nature of request to prospectively enforce prior arbitration award to unarbitrated disputes); *Inland Steel*, 876 F.2d at 1293–94 (surveying high bars other circuits have posted to prospective enforcement); *see also Consol. Coal Co. v. United Mine Workers of Am., Dist. 12, Local Union 1545*, 213 F.3d 404, 406 (7th Cir. 2000) ("courts are reluctant to issue labor injunctions"); *AG Commc'n Sys. Corp. v. Int'l Bhd. of Elec. Workers, Local Union No. 21*, 2005 WL 731026, at *10 n.7 (N.D. Ill. Mar. 28, 2005) (noting that "AGCS has not pointed to any cases in which the Seventh

Circuit has prospectively applied an arbitration award as a bar to future grievances"). Specifically, courts have expressed a concern that prospective enforcement of an arbitration award will effectively nullify the parties' agreement to resolve their disputes by way of arbitration. *See Inland Steel Coal*, 876 F.2d at 1296; *Honeywell*, 522 F.2d at 1225. The premise of Hyatt's challenge to the district court's decision is that confirmation of the Fleischli and Kenis awards will produce that very result, in that confirmation invites the union to bring future disputes under section 56 directly to the court by way of a contempt petition, such that the court will be required to pass on such fact-intensive (and industry-specific) questions as whether there was an emergency justifying hotel managers in performing bargaining-unit work in particular instances—questions of the sort that normally would and should be resolved by an arbitrator. If that were the course of action that the union envisioned in requesting confirmation of the awards, then we would agree that confirmation presents the potential concerns about prospective enforcement that prior cases have expressed. But the precise relief that Local 1 has sought is more modest than Hyatt's challenge would suggest.

As below and again in its brief on appeal, the union has disavowed any attempt to bypass arbitration as to the additional 41 purported violations of section 56 pending between itself and Hyatt. Local 1 represents that it will arbitrate not only those incidents, but any future grievances post-dating the court's confirmation order. Only if Local 1 prevails in arbitrations concerning the latter set of grievances might the union seek contempt sanctions. In short, before Local 1 seeks contempt sanctions, the merits of any grievances underlying the

contempt petition will have already been arbitrated; the court's role will be limited to deciding whether the union is entitled to the additional remedy of contempt sanctions based on the arbitrator's (or arbitrators') findings. That is the understanding on which the district court granted confirmation, and that is the understanding on which we evaluate the court's decision to confirm the Fleischli and Kenis awards.

The issue as presented to us is therefore a narrow one, as is our holding. As we explain below, the facts of this case readily distinguish it from the cases Hyatt relies upon to show that confirmation of the two awards was improper as a matter of law. We need not find more than that in order to sustain the district court's decision. Our holding today is naturally dependent on the particular facts and arguments presented to us. As in prior decisions, we abstain from an effort to look beyond the circumstances of this case and articulate a comprehensive standard as to when prospective enforcement of an arbitration award might or might not be warranted, and what types of relief might be appropriate when it is. *See Inland Steel Coal*, 876 F.2d at 1296; *Honeywell*, 522 F.2d at 1225.[5]

---

[5]   Confirmation of the Fleischli and Kenis awards was decided on the pleadings, and Hyatt (despite one isolated reference in its briefs to the district court's "discretion, " *see* Hyatt opening brief at 8) has framed its appeal as presenting errors of law rather than of discretion in confirming the awards. We address its arguments on these terms. To the extent one might treat as two distinct issues the question whether a labor arbitration award is *eligible* for confirmation, in the sense that it meets the usual criteria for confirmation, *see infra* at 22–23, and the question whether it *should* be confirmed as a prudential matter, we have not been asked to draw such

(continued...)

Hyatt initially attacks the judgment on the ground that there was and is no Article III case or controversy for a court to resolve. *See* U.S. CONST. art. III, § 2. Hyatt points out that it did not challenge either of the two arbitration awards and that once the time for doing so had passed, the awards were final and binding. *See McKinney Restoration Co. v. Ill. Dist. Council No. 1 of Int'l Union of Bricklayers & Allied Craftworkers, AFL-CIO*, 392 F.3d 867, 869 (7th Cir. 2004) (citing, inter alia, *Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Centor Contractors, Inc.*, *supra* n.2, 831 F.2d at 1311); *see also Wm. Charles Constr. Co. v. Teamsters Local Union 627*, 827 F.3d 672, 678 (7th Cir. 2016) ("A failure to challenge an arbitration award within the applicable limitations period renders the award nearly impervious to attack."). Hyatt purports to accept both awards as valid and binding upon itself.[6] Consequently, Hyatt reasons, confirmation of the awards would accomplish nothing. If, as Local 1 represents, it is not seeking preemptive relief as to the additional disputes now being resolved through the grievance and arbitration process, then, in Hyatt's view, the union is not asking for anything that Hyatt has not already given it by

---

[5] (...continued)

distinctions and to consider whether they are subject to different standards of review. We leave such matters for another day.

[6]   In support of that representation, Hyatt submitted the affidavit of its director of labor relations detailing various steps that the company has taken in order to comply with the arbitrators' directive that it cease and desist failing to comply with section 56. The affidavit was one of the extra-pleadings materials that the district court declined to consider when it denied Hyatt's request to convert the union's motion for judgment on the pleadings into a motion for summary judgment.

accepting the first two awards without challenge. *Cf. Derwin v. Gen. Dynamics Corp.*, 719 F.2d 484, 491 (1st Cir. 1983) (questioning wisdom of court placing its imprimatur on arbitration award in "a factual vacuum").

We are satisfied that there is a live controversy between the parties. Hyatt's decision to forego a challenge to either award may render both awards final, but that does not mean that confirmation of the awards can provide nothing of value to the union. *Cf. Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017) (case becomes moot when the source of the plaintiff's prospective injury has been removed and there is no longer any effective relief that the court can order) (collecting cases). Confirmation renders the awards judicially enforceable by way of contempt sanctions, as both parties recognize. Indeed, much of Hyatt's briefing is devoted to arguing why it is inappropriate to make that weapon available to the union. And although Hyatt purports to accept the awards as binding, there is plainly a live dispute about whether Hyatt is in fact acting in compliance with the awards. The 41 pending alleged violations of section 56 demonstrate that there is an ongoing controversy about the use of managers to perform bargaining-unit work.[7] Of course, the parties agree that the merits of those disputes must be resolved through the contractual grievance and arbitration

---

[7] In its answer to the complaint, Hyatt professed ignorance as to the factual allegations underlying these additional purported violations (R. 9 at 11 ¶ 19), but the appellate briefs make clear that there is no dispute as to fact that Local 1 has raised these alleged violations with Hyatt and that the parties have initiated the contractual grievance process to address the incidents in question.

process. But the existence of the additional disputes demonstrates that the parties remain at odds as to what section 56 means and whether Hyatt is complying with the section. That is sufficient to distinguish this case from others in which courts have dismissed a request to confirm an arbitration award for want of a "live and actual dispute between the parties." *See Chicago Reg. Council of Carpenters v. Onsite Woodwork Corp.*, 2012 WL 6189635, at *4 (N.D. Ill. Dec. 12, 2012) (collecting cases); *cf. Buffalo Forge Co. v. United Steelworkers of Am., AFL-CIO*, 428 U.S. 397, 403 n.8, 96 S. Ct. 3141, 3146 n.8 (1976); *CSX Transp., Inc. v. Bhd. of Maint. of Way Employees*, 327 F.3d 1309, 1319–20 (11th Cir. 2003); *cf.* 13C C. Wright, A. Miller, & E. Cooper, FED. PRAC. & PROC. § 3533.3.1, at 116 (3d ed. 2008) (noting that "[l]abor disputes … provide clear illustration of the private disputes that are preserved from mootness by the prospect of future repetition"). The Fleischli and Kenis awards are relevant to those disputes in that they address what constitutes a genuine emergency permitting managers to perform such work; the awards also expressly impose an obligation on Hyatt to comply with their holdings by ordering the company to cease further violations. Confirmation gives teeth to these awards by exposing Hyatt to the prospect of contempt sanctions if it does not comply under circumstances sufficiently similar to those resolved by the two arbitrators. Absent confirmation, the union has no remedy in litigation if Hyatt chooses to ignore them: the awards are not binding in future arbitrations (although arbitrator Kenis elected to follow arbitrator Fleischli's reasoning, she recognized that she was not necessarily obliged to do

so),[8] and the union would not have the option of seeking contempt sanctions from the district court. Whether and when such sanctions might be appropriate obviously is a question that the district court would have to resolve when presented with a request to find Hyatt in contempt. The only question that we need to answer for purposes of our jurisdiction is whether there remains a live case or controversy between the parties, and we have concluded that there is.[9]

---

[8]   Generally speaking, the matter of a prior arbitration's preclusive effect on a later arbitration is one for the arbitrator himself or herself to address, as arbitrator Kenis's award itself reflects. *See Trustmark Ins. Co. v. John Hancock Life Ins. Co. (U.S.A.)*, 631 F.3d 869, 874 (7th Cir. 2011) ("Arbitrators are entitled to decide for themselves those procedural questions that arise on the way to a final disposition, including the preclusive effect (if any) of an earlier award."); *Lindland v. U.S.A. Wrestling Ass'n*, 230 F.3d 1036, 1039 (7th Cir. 2000) ("[a]rbitrators need not follow judicial notions of issue and claim preclusion"); *Consol. Coal Co.*, *supra*, 213 F.3d at 407 (preclusive effect of prior arbitrations is matter of contract rather than law: "If the parties to the collective bargaining agreement want the first arbitrator's interpretation of a provision of the agreement or resolution of a dispute arising under the agreement to have preclusive effect, they can so provide; and whether they do so or not, the question of the preclusive force of the first arbitration is, like any other defense, itself an issue for a subsequent arbitrator to decide.") *Indep. Lift Truck Builders Union v. NACCO Materials Handling Grp., Inc.*, 202 F.3d 965, 968 (7th Cir. 2000) ("the preclusive effect of the first arbitrator's decision is an issue for a later arbitrator to consider") (internal quotation marks and citations omitted).

[9]   Recognizing that there is a live controversy between the parties as to Hyatt's compliance with the two arbitration awards does not require us to resolve a disputed point of fact and assume that Hyatt is indeed violating the awards. We assume only that there is an ongoing dispute as to Hyatt's

(continued...)

We should note at this point that nearly all of the circumstances material to the union's right to confirmation of the two arbitration awards are undisputed. There is no dispute that Hyatt and Local 1 are parties to a collective bargaining agreement; that the agreement sets forth a grievance and arbitration procedure for resolution of disputes between the parties; that disagreements over the proper understanding and application of section 56 of the agreement are within the scope of the parties' agreement to arbitrate their disputes; that the parties did in fact engage in arbitration over instances in which managers performed tasks normally performed by bargaining-unit members; that those arbitrations culminated in the two awards at issue here; that the arbitrators examined the relevant provisions of the CBA in rendering their decisions; and that Hyatt did not timely pursue a challenge to either of the two awards. So, although there are, to be sure, some points of contention between the parties—in particular, whether Hyatt is in good faith endeavoring to comply with the awards and with section 56—they dispute no point relevant to the validity of the two awards.

Judicial review of a labor arbitration award typically is confined to the narrow question of whether the arbitrator's reasoning draws its essence from the parties' agreement. *Enter. Wheel & Car Corp.*, 363 U.S. at 597, 80 S. Ct. at 1361; *see also W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 764,

[9] (...continued)
compliance with section 56 and the two awards, and the existence of that dispute is confirmed by the 41 pending alleged violations.

103 S. Ct. 2177, 2182 (1983); *U.S. Soccer Fed'n, Inc. v. U.S. Nat'l Soccer Team Players Ass'n*, 838 F.3d 826, 831–32 (7th Cir. 2016). By not pursuing a petition to vacate the awards, Hyatt waived even that limited review. *See*, *e.g.*, *Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 276–78 (7th Cir.1989). Notwithstanding the waiver, Judge Gettleman, in view of the fact that Hyatt challenged the propriety of confirmation, examined the two awards and was satisfied that both drew their essence from the agreement. 2015 WL 7077329, at *2. Hyatt does not contend otherwise on appeal. On the threshold question of whether the awards were eligible for confirmation, then, there was no error in the district court's decision to grant judgment on the pleadings in Local 1's favor.

Hyatt contends nonetheless that it is inappropriate for a court to intervene in the ongoing dispute between itself and the union by confirming the awards and thereby laying the groundwork for contempt sanctions. The contractual dispute resolution process should be allowed to resolve the additional alleged violations of section 56, Hyatt argues, without the court placing a finger on the scale by giving the union leverage to seek contempt sanctions against Hyatt if it can convince the court that Hyatt has not complied with the cease-and-desist directives issued by the two arbitrators who resolved the initial grievances. For this argument, it relies on the line of cases we noted at the outset of our analysis which have cautioned against courts preempting the contractual grievance process by prospectively enforcing arbitration awards entered in a union's favor when there are ongoing disputes between the parties that would otherwise be resolved by way of further arbitration.

But we are not convinced that this is what the union has asked the court to do here. In the Fleischli and Kenis awards, Local 1 secured not only the backward-looking determination that Hyatt had violated section 56 on the particular facts confronting the arbitrators in those proceedings, but an articulation of a standard as to what constitutes a legitimate emergency, coupled with forward-looking relief ordering Hyatt to cease and desist from further violations. Whether the awards are clear enough to place Hyatt on notice of what actions, in what circumstances, are prohibited, *see Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989), is a separate matter to be resolved in a future contempt proceeding (if such a proceeding takes place). Yet we do not think that simple confirmation of the two awards is barred on the rationale that Hyatt has articulated.

To begin, this is not a case, like *Honeywell*, in which we concluded that the union was attempting to bypass the arbitration process by seeking declaratory and injunctive relief from the district court that it could have sought from arbitrators but had not. At issue in *Honeywell* was the employer's purported ongoing failure to comply with a contractual provision barring (with limited exceptions) supervisors, foremen, and workers outside of the bargaining unit from engaging in work normally performed by unit members. The union already had prevailed in four arbitrations on that subject and the arbitrators had granted make-whole relief to the affected employees; but none of the awards had granted prospective relief to the union. The union, alleging that there were many other instances of the employer violating the provision—some number of which were still working their

way through the contractual grievance process—filed a complaint asking the district court to enter declaratory relief that the employer was violating the collective bargaining agreement and injunctive relief requiring the employer to adhere to the contractual provisions regarding the proper assignment of work. We concluded that the union's complaint failed to state a cause of action for such extraordinary relief.

At the outset of our analysis, we noted the unusual nature of the union's case:

> The claim which the Union seeks to establish here is not the ordinary one. While there are numerous reported cases of parties seeking to force or enjoin arbitration or to enforce an arbitration award, it is most unusual to find a party seeking the right to bypass arbitration procedures which it is contractually bound to follow and which are concededly applicable to the particular incidents generating disputes. Although we do not foreclose the possibility that there might exist particularly egregious circumstances which, if alleged, might state a cause of action for relief from a contractual duty to arbitrate, it is our opinion that the allegations of the complaint before us are not sufficient to state such a cause of action.

522 F.2d at 1225.

We went on to identify at least three reasons why it would be inappropriate for the court to entertain the relief requested by the union. First, there was no showing that the union had

sought to aggregate its multiple grievances into a single arbitration proceeding. *Id.* at 1226. Such aggregation would permit the union to establish that the employer was engaging in a course of conduct violating the contractual provision in question; and such a showing in turn might support the sort of broad declaratory and injunctive relief the union was seeking. *Id.* Second, in the four grievances already taken to arbitration, the union had not asked the arbitrators themselves to grant declaratory and injunctive relief. *Id.* "[S]uch relief is not inherently beyond the capacity of an arbitrator to grant," *id.*, and there were any number of examples of courts sustaining arbitration awards granting such prospective relief, *id.* at 1226–27 (collecting authorities).[10] Third, the union had not alleged that "the factual basis of the four arbitration awards [already resolved] in its favor [was] so nearly identical to the facts of the pending grievances [not yet presented for arbitration] that the Company's conduct constitutes wilful and persistent disregard of the arbitration awards." *Id.* at 1227; *see id.* at 1226. To the contrary, "[e]ach [pending] grievance appears to arise out of entirely different facts." *Id.* at 1227. Thus, it was not at all clear that arbitrators were likely to resolve the additional grievances in the union's favor, or that any prospective relief the court might enter would answer the fact-specific questions posed by those grievances. *Id.* at 1227–28.

---

[10]    *See also* R. Schoonhoven, FAIRWEATHER'S PRAC. & PROC. IN LABOR ARBITRATION § 15X, at 494–96 (4th ed. 1999) (summarizing various forms of injunctive relief arbitrators may enter, including cease and desist orders, and collecting cases).

Although the factual backdrop to this case certainly is similar to that in *Honeywell*, the limited nature of the relief sought and obtained by the union from the district court is not. In this case, the union was not attempting to bypass the arbitration process in order to obtain prospective relief that it could have, but did not, ask an arbitrator to enter. In both of the two arbitrations at issue here, the union asked for and was granted forward-looking cease-and-desist orders by the arbitrators. Also, in resolving the particular grievances presented to them, the arbitrators necessarily had to articulate what constitutes an emergency permitting a manager to perform bargaining-unit work. The awards thus gave the parties at least some guidance on what was and was not permitted, and it was in that context that Hyatt was ordered to refrain from further violations of section 56 in the future. Moreover, in seeking confirmation of the awards, the union did not ask for, and the district court did not grant, the sort of broad declaratory and injunctive relief that its counterpart asked for in *Honeywell*. Local 1 asked only that the court confirm the two arbitration awards entered in its favor, period. Although confirmation opens the door to a contempt proceeding at a later date, nothing that the district court did prejudges the outcome of such a proceeding. The union agrees that any unresolved disputes must wend their way through the contractual dispute resolution process, and that any request for contempt sanctions will be premised on future arbitration awards arising from grievances that post-date the district court's confirmation order. There is, therefore, no attempt to bypass the arbitration process, and we can discern no concrete

impact that confirmation of these two awards will have on the outcome of that process.

Nor is this a case comparable to *Inland Steel Coal*. The union in that case had prevailed in successive arbitrations challenging the employer's decision to send workers home early in two instances, occurring five years apart, despite the availability of so-called "dead work" to occupy the workers. In both cases, the arbitrator had ordered compensatory relief only; in the second case, the union had asked for but did not obtain a cease-and-desist order from the arbitrator. When the employer sent workers home early for a third time five years after the second incident, the union filed suit seeking specific enforcement of the two arbitration awards—in other words, the union asked the court to apply those awards prospectively to resolve the new dispute between the parties rather than having an arbitrator do so.

The district court denied relief to the union, and we affirmed that decision. We noted first that neither of the arbitrators had included language in their awards directed to future action by the employer, "strongly" suggesting to us "that the arbitrators did not want the awards to apply prospectively," a conclusion reinforced by language in the collective bargaining agreement confining an arbitrator's authority to the particular dispute before him. 876 F.2d at 1295. And although the union had made a case for the notion that facts underlying the employer's latest transgression were substantially the same as those presented in the prior arbitrations, it had not alleged that the company's conduct amounted to "wilful and persistent disregard" of the prior awards. *Id.* at 1295–96. And "[a]s a matter of law, we do not believe that three isolated incidents of

sending workers home early when 'dead work' is available over a ten year period constitutes 'wilful and persistent disregard of the arbitration awards." *Id.* at 1296. Likewise, we were not convinced that judicial intervention was necessary to bring an end to repetitive grievances and arbitrations over the same point, given the limited number of disputes involved. "In submitting [the third] grievance to an arbitrator, the union is free to argue that it has already submitted this same dispute to arbitration. In that way, the arbitrator can consider the fact that the dispute was previously arbitrated and decide for himself if he believes that declaratory and injunctive relief is warranted by the facts of the case." *Id.* (citation omitted).

Here, again, the union is simply seeking to confirm prospective relief that it has already litigated and obtained from two arbitrators. The serial disputes between Hyatt and the union as to managers performing bargaining-unit work demonstrates that this is not, in contrast to *Inland Steel*, an isolated problem. So confirming the two prior awards may prove to have some utility. And, at the same time, Local 1 is not asking for a court to enforce the two awards preemptively so as to dispose of the merits of the additional disputes in a judicial forum; the union agrees that those disputes should instead be resolved through the contractual grievance and arbitration procedure.

In short, the circumstances of this case do not trigger the barriers to prospective enforcement articulated in *Honeywell* or *Inland Steel Coal*. Local 1 is not asking for the court to award forward-looking relief not already awarded in arbitration, nor is it seeking to bypass or preempt further arbitration between the parties. To be clear, we are not saying that a union's request

to confirm a cease-and-desist award in its favor must always be as circumscribed as Local 1's is in this case. Our decision in *Honeywell* does not wholly foreclose the possibility that there might be circumstances in which a court properly could prospectively enforce an award in such a way as to preempt further arbitration on the same question. 522 F.2d at 1225, 1228. But we leave consideration of when that course of action might be appropriate for another case.

Hyatt pursues another challenge to confirmation that is based on prudential concerns. It likens this case to those that confronted the First Circuit in *Derwin v. Gen. Dynamics Corp.*, *supra,* and which led that court to caution against confirming a labor arbitration in a "vacuum." 719 F.2d at 491.

The union and the employer in *Derwin* had recurring disputes over the time off owed to union stewards from their regular work so that they might investigate grievances and handle related union matters. The collective bargaining agreement specified an off-the-job pass system for this purpose, and the employer in turn had adopted a set of guidelines on the subject that the union opposed. An arbitrator upheld the guidelines and articulated certain principles regarding appropriate practices with respect to the passes. Three years after the arbitration award, when the employer and the union found themselves in the midst of some 17 grievances over the employer's failure to issue passes to stewards, the union filed suit seeking confirmation of the award. The district court dismissed the suit as untimely. The appellate court disagreed on that point but nonetheless upheld the judgment.

In the First Circuit's view, confirmation of the award was "unwarranted." *Id.* at 490. Although the union was seeking confirmation simpliciter, without contemporaneously asking for any declaratory, injunctive, or other prospective relief with respect to pending grievances, the court was concerned that such "paper" confirmation of the award (*id.*), because it opened the door to subsequent contempt proceedings, posed the risk of aggravating the parties' ongoing disagreement rather than facilitating its resolution. Where the parties have agreed to arbitrate their disputes, the court noted, established labor policy restricts the role of the federal judiciary; and courts had traditionally treated with skepticism requests to confirm a prior arbitration award in order to render the award binding in the context of a later, factually similar dispute. *Id.* at 491. "Only where an arbitral award is both clearly intended to have prospective effect and there is no colorable basis for denying the applicability of the existing award to a dispute at hand, will a court order compliance with the award rather than require the parties to proceed anew through the contract grievance procedure." *Id.* The union was asking the court to effectively bifurcate a typical enforcement proceeding by seeking to confirm the award in a vacuum and reserve concrete questions about the propriety of enforcement (*i.e.*, translating the award into specific relief that might directly resolve the parties' ongoing disputes) for a later date. The court questioned the wisdom of that approach, fearing that confirmation of the award would merely give the parties something more to argue about. *Id.* at 491–92. The court, in its parting words, noted that the substantive law regarding section 301(a) subsumes the prudential values of Article III of the Constitution, which

counsel against the confirmation of arbitration awards in the absence of a concrete dispute. While acknowledging the district court's authority to confirm the award and decide later whether the parties' disagreement should be resolved by a judge or an arbitrator, the court was not persuaded of the wisdom of that approach. "[W]e see no point to such spinning of the wheels … ." *Id.* at 493.

*Derwin*, having been decided by a sister circuit, amounts to persuasive but not binding authority in this circuit. Although there are certain similarities between this case and *Derwin*, there are also significant differences. Given those differences, we do not believe that *Derwin* demonstrates any legal error in the district court's decision to confirm the awards at issue here.

First, as was not the case in *Derwin*, the two arbitrators here not only attempted to give the parties guidance on how to apply the relevant provision of the collective bargaining agreement but specifically ordered Hyatt to refrain from repeating the types of actions the arbitrators had found to be in violation of the agreement. The arbitrators plainly thought that section 56 of the CBA and their own rationale as to the violations was clear enough to grant the union's request for prospective, "cease and desist" relief. In this respect, confirmation of the awards serves to reinforce the scope of relief awarded by the arbitrators rather than broadening the awards in a way that the arbitrators themselves did not intend.

Second, Local 1 is not seeking confirmation in order to gain any particular advantage with respect to the many additional disputes pending between the parties, which by contrast *was* the evident (if unspoken) aim of the union in *Derwin*. The First

Circuit plainly understood the union to be seeking confirmation in order to enable the court itself to resolve additional grievances that would otherwise be submitted to arbitration. *See id.* at 491. Local 1, by contrast, has conceded that it must arbitrate any grievances pre- and post-dating the district court's confirmation decision. Nothing in the union's request for confirmation suggested that it was asking the court to insert itself into the arbitration process or in any way restrict the authority of arbitrators to resolve the merits of future arbitrations as they see fit. Confirmation simply preserves the possibility of additional relief in the form of contempt sanctions if and when the union prevails in future arbitrations (and can make an appropriate case for such sanctions).

This case *is* like *Derwin* in that Local 1 is pursuing a bifurcated approach to enforcement of the arbitration awards: it has asked the court to do nothing more than confirm the awards now, and is reserving the matter of enforcement, through a contempt proceeding, for a future date. In that sense, the union asked the court to confirm the awards in a "vacuum," as *Derwin* put it. The court thus has not yet had the opportunity to evaluate whether and how the two awards might bear on any pending or future disputes on the same subject. The union may or may not have a case to make for contempt sanctions if and when those disputes result in findings by an arbitrator (or multiple arbitrators) that Hyatt has persisted in practices that violate section 56. If the union does seek contempt sanctions, the court will necessarily have to consider, among other factors, whether the circumstances of the later violations are similar enough to those found by arbitrators Fleischli and Kenis to warrant the inference that Hyatt has deliberately

defied the cease and desist directives of those two arbitrators. No one can know at this point whether there will be such a contempt proceeding and what the merits of the union's case for contempt sanctions might be. In that limited sense, this is merely a "paper" confirmation.

But we are not as convinced as the First Circuit was that confirmation in this context amounts to unwarranted busy work on the part of the court. Two arbitrators have already had an opportunity to consider a fairly substantial range of alleged violations of section 56, to articulate what constitutes an emergency permitting managers to perform bargaining-unit work, and to decide that Hyatt should be ordered to cease and desist from further violations of section 56. The foundation for confirmation is thus significantly stronger than it was in the cases we have just discussed. And although the matter of enforcing the awards (through a potential contempt proceeding) has been severed from the matter of confirmation, this bifurcation ensures that the merits of additional grievances are reserved for arbitration and that any contempt petition will in no way preempt or disturb that contractual dispute-resolution process. Again, given Local 1's concession, any contempt request will be premised on grievances that post-date confirmation of the awards. To our mind, this grants maximum deference to the contractual grievance and arbitration mechanism by granting judicial confirmation to what has already been resolved by the arbitrators and keeping the court's hands off of the matters that have not yet been resolved. It also affords Hyatt ample opportunity to conform its practices to the CBA and to the Fleischli and Kenis awards.

As we have said, the question whether the Fleischli and Kenis awards should be enforced through a contempt finding is a question to be taken up at a later date, if and when additional grievances have been arbitrated in the union's favor and the union makes a case for contempt sanctions. Nothing about the union's request for confirmation has asked the district court or this court to prejudge the merits of any such request, and the district court's own remarks confirm that it has not prematurely reached any conclusion as to the propriety of any such sanctions.

Hyatt has given us no reason to believe that confirmation of the Fleischli and Kenis awards now will in any way tie the hands of arbitrators in future proceedings as to grievances arising from the 41 pending alleged violations and any additional grievances beyond those. *See* n.8, *supra.* In any case, it is far from clear that postponing confirmation of these awards to a later date would make any difference insofar as Hyatt's position is concerned; its objection to confirmation at times appears absolutist. Hyatt goes so far as to suggest in the briefing that the proper remedy for Local 1 to pursue, if it believes that Hyatt is not complying with the Fleischli and Kenis awards, is to call a strike of its members. (Section 7 of the CBA provides that there shall not be strikes so long as Hyatt follows the grievance procedure and abides by the results of that procedure. R. 1-1 at 11 § 7(A).) That is a remarkable position at odds with both the spirit of the arbitration provision of the CBA and longstanding labor policy favoring the peaceable resolution of labor disputes through arbitration.

In sum, although Local 1's request to confirm the two awards can be understood to seek prospective enforcement of

the awards in that it opens the door to a contempt proceeding at a later date, given the relative modesty of the union's confirmation request and its concession that any pending and future disputes regarding the application of section 56 must first be arbitrated and resolved in the union's favor before it pursues a request for contempt sanctions, we find nothing improper in the district court's decision to confirm the awards. The union has asked us to remand the case to the district court so that the judgment can be amended to expressly reflect that any postjudgment disputes over section 56 indeed must be arbitrated before Local 1 invokes them as the basis for a contempt petition. We find that step to be unnecessary, given that the union has unequivocally voiced its intent to arbitrate any such disputes, the district court resolved the case with that declaration in mind, and we have affirmed the district court's decision on that same understanding.

### III.

The district court committed no error in granting Local 1's motion for judgment on the pleadings and confirming the two arbitration awards at issue in this case. There was no dispute of fact material to confirmation of the awards that precluded judgment on the pleadings, and none of the concerns we have cited as rendering prospective enforcement of a labor arbitration award improper was present.

AFFIRMED